**In re Lawrence B. GREENE and Helena Greene, Debtors.**

**Bankruptcy No. 85 B 20497.**

United States Bankruptcy Court, S.D. New York.

Jan. 28, 1986.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Gibraltar Corp. of America; Morton L. Gitter, of counsel.

Stephens & Buderwitz, White Plains, N.Y., for Mfrs. Hanover Trust Co.; Joseph M. Buderwitz, of counsel.

Barr & Faerber, Spring Valley, N.Y., for debtors; Harvey S. Barr, of counsel.

## DECISION ON MOTION TO CONVERT CASE TO CHAPTER 7 OR TO DISMISS CASE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Gibraltar Corporation of America ("Gibraltar") the holder of both a secured and an unsecured claim in this Chapter 11 case, has moved for an order pursuant to 11 U.S.C. § 1112(b) converting this case to a case under Chapter 7 of the Bankruptcy Code, or for dismissal of the case. Manufacturers Hanover Trust Company ("Trust Company"), which also holds a secured claim in this case, has joined with Gibraltar in support of the motion. The debtors, Lawrence B. Greene and his wife, Helena Greene, oppose the motion. The debtors annexed to their opposing papers a purported plan of reorganization which "contemplates the sale of the debtors' single greatest asset, their house in Larchmont, New York." The "plan" proposes that all of the debtors' creditors will be paid over a ten-year period, commencing nine months after confirmation. The debtors intend to repair and sell their residence in Larchmont, New York and apply the net proceeds of the sale to the payment of expenses of administration and priority claims in this case, followed by a payment to all allowed secured claim holders, with the balance, if any, to be applied towards a payment to unsecured claims and for use by the debtors "to further their business interests in order to generate the income necessary to make continuing payments in future years."

### FINDINGS OF FACT

1. On August 27, 1985, this court determined that the separate Chapter 13 cases filed with this court by the debtors, Lawrence B. Greene, and his wife, Helena Greene, on March 13, 1985, should be dismissed because the debtors were ineligible for relief under Chapter 13. The court found that their debts exceeded the statutory maximum of unsecured and secured amounts delineated in 11 U.S.C. § 109(e).

The debtors' appeals of the dismissal of their Chapter 13 cases are still pending.

2. The debtors' home in Larchmont, New York is encumbered by a first mortgage held by Trust Company, as reflected by the secured claim which it filed in this case in the amount of $108,894.32. Trust Company had obtained a judgment of foreclosure and sale in the New York State Supreme Court, Westchester County, on April 18, 1985.

3. On September 6, 1985, this court entered orders in the debtors' Chapter 13 cases determining that Gibraltar holds a secured claim against the debtors' home in the amount of $270,000 resulting from two separate mortgages, each in the sum of $135,000. The orders further recite that Gibraltar's total claim against the debtors, including the secured claim of $270,000, amounted to $954,356.08. The debtors' obligation to Gibraltar arose out of the personal guarantees which the debtors issued to Gibraltar in consideration for Gibraltar's financing the accounts receivable of a zipper manufacturing company that the debtors once operated and which has since been liquidated under Chapter 7 of the Bankruptcy Code.

4. In addition to the first mortgage of approximately $108,894.32, and Gibraltar's secured claim of $270,000, the debtors' home is also subject to a judgment lien that was entered in favor of P.A. Building Company in the then amount of approximately $117,000. Thus, when the debtors' Chapter 13 petitions were dismissed by this court the total secured claims filed against their residence approximated $495,894.32, exclusive of interest and unpaid real estate taxes.

5. On October 21, 1985, the day before the mortgage foreclosure sale scheduled by Trust Company, the debtors filed with this court their second petition for relief; this time a joint petition under Chapter 11 of the Bankruptcy Code.

6. The moving parties have established, and the debtors do not deny, that the debtor, Lawrence B. Greene, is a self-employed manufacturer's representative and has a

take home income from commissions earned of approximately $500 per week. The debtor, Helena Greene, has no present income. Hence, other than the commissions earned by the debtor, Lawrence B. Greene, as a manufacturer's representative, there is no other business for which reorganizational relief is sought.

7. The debtors' only asset, except for some potential tax refunds, is their Larchmont, New York home. They reside in a fashionable three-story Mediterranean style house which is located on approximately one acre of property with an in-ground swimming pool, overlooking Long Island Sound. The house is on a dead end street in a choice neighborhood with a view of the boats on the Sound. Mr. Greene could not recall how many rooms their house had.

8. Mr. Greene testified that the house is worth approximately $500,000. He said that with some repairs, including some painting, replacing some gutters and leaders, lawn work and grass work and cleaning the swimming pool, the property would be worth between $750,000 and $1,000,000. Mr. Greene testified that he and his family could do about 80% of the work themselves and that the cost would amount to between $3000 and $4000.

9. The debtors have not paid any real estate taxes or insurance premiums with respect to their house for more than two years. The current real estate taxes on the house are in excess of $12,000 per year. The debtors' bankruptcy schedules reveal that $1229.95 is owed to the Larchmont Water Department and that the Con Edison utility debt amounts to $2449.40.

10. Gibraltar has declared that it is the debtors' single largest secured and unsecured creditor and that it will not consent to the debtors proposed ten-year plan. Moreover, Gibraltar contends that the debtors are financially incapable of achieving a confirmation of their proposed Chapter 11 plan, which Gibraltar argues was filed in bad faith on the eve of the scheduled foreclosure sale. Gibraltar points to the fact that the debtors' plan contemplates that no payments will be made to any creditors until nine months after confirmation, whereas the debtors are residing in their fashionable house, rent free and tax free while the taxes and insurance premiums continue to accrue and the creditors are deprived of the use of the money owed to them.

11. The debtors contend that they wish to repay their creditors in full over a period of ten years. They agree that their house must be sold in order to commence payments to their creditors, but argue that they should be given until nine months after confirmation before any repayments would begin in order to allow them sufficient time to upgrade their house in order to maximize the sales price. Gibraltar and Trust Company declare their objection to the debtors' Chapter 11 plan because the debtors ceased making mortgage payments on their house more than two and one-half years ago and have failed to pay real estate taxes or insurance premiums for their house. The moving parties assert that the debtors' Chapter 11 petition was filed in bad faith, without any hope of reorganization, on the eve of the scheduled foreclosure sale with respect to their home, which is their sole asset. The moving parties state that the debtors' Chapter 11 petition "was filed solely to take advantage of the automatic stay, so that they could continue their rent free, tax free occupation of their house ... while appealing the myriad judgments which have been entered against them without the necessity of obtaining appeal bonds." Application of Gibraltar in support of the motion, dated December 18, 1985 at 1–2.

## DISCUSSION

A motion to convert or dismiss a Chapter 11 case for cause is authorized under 11 U.S.C. § 1112(b). In determining what constitutes cause within the meaning of this section, the court may consider nine statutorily enumerated factors, including:

(1) continuing loss or diminution of of the estate and absence of a reasonable likelihood of rehabilitation.

A number of cases dealing with motions to convert or dismiss under 11 U.S.C. § 1112(b) have imposed as an additional ingredient of a Chapter 11 petition that it be filed in good faith, notwithstanding that good faith is not expressly stated as a factor to be considered for purposes of determining cause for conversion or dismissal. *E.g. In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985); *Furness v. Lilienfield (In re Lilienfield),* 35 B.R. 1006 (D.Md.1983); *In re Chesmid Park Corporation,* 45 B.R. 153 (Bankr.E.D.Va. 1984); *In re Levinsky,* 23 B.R. 210, 9 B.C.D. 791 (Bankr.E.D.N.Y.1982); *In re 299 Jack-Hemp Associates,* 20 B.R. 412 (Bankr.S.D.N.Y.1982); *Paccar Financial Corp. v. Pappas (In re Pappas),* 17 B.R. 662 (Bankr.D.Mass.1982); *In re Eden Associates,* 13 B.R. 578, 17 B.C.D. 1190 (Bankr.S.D.N.Y.1981); *First Interstate Bank v. Weathersfield Farms, Inc. (In re Weathersfield Farms, Inc.),* 14 B.R. 574 (Bankr.D.Vt.1981) *aff'd.* 15 B.R. 282 (D.Vt. 1981); *In re Nancant, Inc.,* 8 B.R. 1005, 7 B.C.D. 410 (Bankr.D.Mass.1981). This point was expressed recently by the Sixth Circuit Court of Appeals as follows:

> Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had an ongoing business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed. *Id.* [*In re Dolton Lodge, Trust No. 35118,* 22 B.R. 918 (Bankr.N.D.Ill.1982)] at 923; *see In re Eden Associates,* 13 B.R. 578, 585 (Bankr.S.D.N.Y.1981) ("The debtor, with no assets, no bona fide creditors and no business, cannot effectively rehabilitate its enterprise...."); *see also In re Tinkoff,* 141 F.2d 731 (7th Cir.1944) (mortgage foreclosure proceedings in state court were valid and equity of redemption expired; debtor had no interest in property for which it sought to provide arrangement and dismissal of petition was proper).

*In re Winshall Settlor's Trust,* 758 F.2d at 1137. Nonetheless, the now common practice of filing a bankruptcy case on the eve of the foreclosure of the debtors' home should not be tested in the context of the debtors' good faith or bad faith. *See Warner v. Universal Guardian Corporation (In re Warner),* 30 B.R. 528, 10 B.C.D. 1070 (Bankr.App. 9th Cir.1983). As stated by Chief Judge Feinberg in the Second Circuit Court of Appeals:

> The purpose of § 1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time.

*A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.),* 749 F.2d 146, 152 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985).

That the debtors are individuals and are not engaged in a business subject to reorganizational relief should not detract from their right to seek relief under Chapter 11. Some courts have viewed Chapter 11 relief as available only for business debtors. This point was expressed in *In re Winshall Settlor's Trust,* 758 F.2d at 1137 and repeated in *In re Golden Ocala Partnership,* 50 B.R. 552, 557 (Bankr.M.D.Fla. 1985) as follows:

> The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See, In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre...."* *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D.Ky.1983).

However, Chapter 11 is not restricted to business debtors, although it is primarily designed to afford reorganizational relief for financially distressed business entities. The legislative history indicates that individuals are also eligible for relief under Chapter 11. S.Rep. 989, 95th Cong. 2d Sess. 3 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5789. Hence, con-

sumer debtors who do not have a regular income or whose liabilities exceed the maximum amounts prescribed in 11 U.S.C. § 109(e) and are ineligible for relief under Chapter 13 of the Bankruptcy Code, are eligible to file petitions under Chapter 11. *In re Moog,* 774 F.2d 1073 (11th Cir.1985); *In re Warner,* 30 B.R. 528, 10 B.C.D. 1070 (Bankr.App. 9th Cir.1983). *See In re Mastroeni,* 56 B.R. 456, 13 B.C.D. 1129 (Bankr. S.D.N.Y.1985); *In re Martin,* 51 B.R. 490, 494 (Bankr.M.D.Fla.1985). As stated in *In re Moog,* 774 F.2d at 1074–1075:

> Thus, although Chapter 11 petitions are primarily filed by business debtors, the legislative history supports the view that a consumer debtor might file under Chapter 11 if compelled to do so under certain circumstances.
>
> This case represents the unique circumstance where Chapter 11 is preferable over Chapter 13 for a consumer debtor who wishes to recognize [*sic*].... Ms. Moog had no regular source of income and consequently could not qualify for reorganizational relief under Chapter 13 ... Consequently, her only means of relief beyond Chapter 11 would be a Chapter 7 liquidation proceeding which would obviously entail the loss of the home, the appellant's sole asset.

(citation omitted).

In the instant case, the debtors contend that they do not seek to save their family home from sale, nor do they contemplate residing there indefinitely. Instead, they maintain that they do not want the home to be sold now at a foreclosure sale and would prefer to have it sold nine months after the confirmation of their proposed Chapter 11 plan, during which time they would like to make some repairs so that the property would sell for between $750,000 and $1,000,000. rather than at its current value of approximately $500,000. However, the debtors do not propose to turn over all of the proceeds from the proposed sale to their creditors. They would like to pay the unsecured creditors only a portion of the balance remaining, if any, after the payment of the expenses of sale, administration expenses and secured claims. The

debtors would like to retain a portion of the proceeds of sale in order "to further their business interests...." This concept is unacceptable to the moving parties, especially in the light of the debtors' poor track record as business managers. More importantly, the moving parties object to the debtors remaining in possession of the property in which they have no equity, while not paying real estate taxes and insurance premiums, at a time when the secured creditors do not have the use of the funds owed to them for investment elsewhere.

### Estate Diminution and No Likelihood of Rehabilitation

■ It is settled law that the burden to establish cause for dismissal or conversion to Chapter 7 rests squarely on the party seeking such relief. *In re Photo Promotion Associates, Inc.,* 47 B.R. 454, 458, 12 B.C.D. 1121, 1123–1124 (Bankr.S.D. N.Y.1985); *In re Economy Cab & Tool Company, Inc.,* 44 B.R. 721 (Bankr.D. Minn.1984); *In re Route 202 Corporation,* 37 B.R. 367, 374 (Bankr.E.D.Pa.1984); *In re Earth Services, Inc.,* 27 B.R. 698, 700 (Bankr.D.Vt.1983); *In re Karl A. Neise, Inc.,* 16 B.R. 602, 603 (Bankr.S.D.Fla.1981). A party moving pursuant to 11 U.S.C. § 1112(b)(1) must therefore meet both prongs of the twofold test, namely, continuing loss to, or diminution of, the estate and absence of a reasonable likelihood of rehabilitation. *In re Photo Promotion Associates, Inc.,* 47 B.R. at 458, 12 B.C.D. at 1124; *In re Powell Brothers Ice Company,* 37 B.R. 104, 107 (Bankr.D.Kan.1984); *In re Tracey Service Company, Inc.,* 17 B.R. 405, 409 (Bankr.E.D.Pa.1982); *In re E. Paul Kovacs and Company, Inc.,* 16 B.R. 203, 205 (Bankr.D.Conn.1981); *In re Steak Loft of Oakdale, Inc.,* 10 B.R. 182, 185 (Bankr.E.D.N.Y.1981); *In re Alves Photo Service, Inc.,* 6 B.R. 690, 693 (Bankr.D. Mass.1980).

■ In this case, the moving parties have established a continued diminution of the estate. The debtors' main asset is their

home, which they value at approximately $500,000. The face amount of the secured claims against the property total $495,-894.32. There must be added to this figure the real estate taxes which accrue at the rate of over $12,000 per year and which have not been paid by the debtors for over two years, together with unpaid annual insurance premiums. The debtors concede that the house must be painted and repaired. They do not now have the funds to perform this needed work. It is not clear where they expect to obtain sufficient funds to finance the proposed repairs.

The evidence in this case amply supports the moving parties' position that there is an absence of a reasonable likelihood of a rehabilitation. The term "rehabilitation" has been held to mean more than a "reorganization" under Chapter 11 because a plan of reorganization may now include a complete liquidation of a debtor's assets pursuant to 11 U.S.C. § 1123(b)(4). Rehabilitation within the meaning of 11 U.S.C. § 1112(b)(1) has been defined to mean that the debtor would be reestablished on a firm, sound basis. *In re E. Paul Kovacs and Company, Inc.,* 16 B.R. at 206; *In re Tolco Properties, Inc.,* 6 B.R. 482, 488 (Bankr.E.D.Va. 1980). In this case the debtors assert that they do not intend to try to retain their $500,000 home in the face of their secured claims which exceed $500,000 and their unsecured claims which exceed $1,000,000. They would like to effect an orderly liquidation by obtaining funds to repair their home and then selling it approximately nine months after confirmation of their Chapter 11 plan, at which time they hope to realize between $750,000 and $1,000,000. Although they propose to pay their secured creditors from the proceeds of sale, they would like to retain sufficient funds from the balance of the proceeds to finance another business venture which they expect would enable them to repay their unsecured creditors in accordance with their ten-year plan. In short, they wish to speculate at the expense of their creditors while remaining in possession of the property without having to pay rent, real estate taxes or insurance premiums. If the debt-

ors were required to pay rent, taxes and insurance premiums they would be unable to continue in possession because their only source of income is Mr. Greene's $500 per week take home pay, which amounts to approximately $26,000 per year. The taxes alone are more than $12,000 per year. A reasonable rent for this water-view property, together with the cost of insurance premiums, water taxes, fuel and utility charges, and the expenses for food and maintenance for the debtors and their family would exceed the debtor's $26,000 annual take home pay.

A confirmation of the debtors' proposed Chapter 11 plan is central to their rehabilitation scheme. However, Gibraltar is the holder of the largest secured and unsecured claims against the debtors and it has unequivocally declared that it will not accept the debtors' plan or any other plan that proposes to delay Gibraltar's right to realize upon its collateral. Trust Company, the holder of the first mortgage against the debtors' home, supports Gibraltar's rejection of the proposed Chapter 11 plan. In light of the fact that Gibraltar's unsecured claim is impaired by the proposed plan within the meaning of 11 U.S.C. § 1124, and since Gibraltar's unsecured claim represents more than two-thirds in amount of the allowed unsecured claims, the debtors will be unable to obtain the acceptance of at least one class of impaired claims as required for confirmation pursuant to 11 U.S.C. § 1129(a)(10).

It is apparent from the facts and figures in this case that the debtors' proposed plan for a delayed liquidation of their real estate is not likely to result in a rehabilitation of their financial status nor would such plan culminate in a successful Chapter 11 reorganization. As stated by the Eighth Circuit Court of Appeals:

Although we sympathize with the [debtors], we find that the feasibility test is firmly rooted in predictions based on objective fact. The Second Circuit has declared that the feasibility test contemplates "the probability of actual performance of the provisions of the plan. Sinc-

erity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In Re: Bergman*, 585 F.2d 1171, 1179 (2d Cir.1978) (quoting 9 Collier on Bankruptcy, at 1139).

*Clarkson v. Cooke Sales and Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir.1985).

The debtors in the instant case seek to take advantage of the provisions of the Bankruptcy Code by filing under Chapter 11, with a delayed liquidation of their Larchmont home as their goal under the umbrella of this court. However, the debtors should not be permitted to speculate with real estate in which they have no equity at the expense of their creditors who desire to realize upon their collateral now. An orderly liquidation under Chapter 7 would provide an opportunity for a negotiated sale at a better price than might be obtainable at foreclosure and would allow for an orderly distribution of the proceeds of sale. *In re E. Paul Kovacs and Company, Inc.*, 16 B.R. at 206; *In re Tolco Properties, Inc.*, 6 B.R. at 489. Accordingly, the orderly liquidation sought by the debtors would best be accomplished by converting this case for liquidation under Chapter 7, where the interests of all the creditors would be served, rather than dismissing this case in order to allow the secured claim holders to foreclose upon their collateral.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter at issue pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Gibraltar has sustained its burden of proving that cause exists for converting or dismissing this case because of a continuing loss or diminution of this estate and absence of a reasonable likelihood of rehabilitation within the meaning of 11 U.S.C. § 1112(b)(1).

3. It is in the best interest of all the creditors and this estate that the case be converted for liquidation under Chapter 7 of the Bankruptcy Code. Gibraltar's motion pursuant to 11 U.S.C. § 1112(b)(1) is granted to the extent that it seeks an order for conversion to a case under Chapter 7 of the Code.

SUBMIT ORDER on notice.