**In re Lawrence B. GREENE and Helena Greene, Debtors.**

**Maurice BAER and Barbara Balaber–Strauss, as Trustee of the estate of the Debtors, Plaintiffs.**

v.

**Lawrence B. GREENE and Helena Greene, Defendants.**

**Bankruptcy Nos. 85 B 20497, 86 ADV. 6099.**

United States Bankruptcy Court, S.D. New York.

Jan. 20, 1988.

Barbara Balaber-Strauss, Trustee, New York City, for Trustee.

James Do Campo, Brooklyn, for Maurice Baer.

Lawrence B. Greene and Helena Greene, pro se.

## DECISION ON OBJECTIONS TO DISCHARGE AND DISCHARGEABILITY OF DEBT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 7 trustee and the debtors' former landlord, Maurice Baer, have jointly moved to deny the debtors' discharge under 11 U.S.C. § 727. Additionally, the debtors' former landlord has moved under 11 U.S.C. § 523(c) to have a business rent claim held nondischargeable because the debtors allegedly misappropriated a bond that was deposited as security for rent for commercial premises leased to the debtors' business. The debtors, Helena Greene and Lawrence A. Greene, are husband and wife who had previously engaged in a zipper manufacturing business under various business names, such as Abbot Closures, Inc., Forum Narrow Fabrics, Inc., Nine to Five Zipper Sales, Christopher Ames and Finast Products, Inc.

### FINDINGS OF FACT

1. On March 13, 1985, the debtors separately filed their Chapter 13 cases with this court. On August 27, 1985, this court determined that the separate Chapter 13 cases should be dismissed because the debtors were ineligible for relief under Chapter 13 of the Bankruptcy Code. The court found that their debts exceeded the statutory maximum of unsecured and secured amounts delineated in 11 U.S.C. § 109(e).

2. On October 21, 1985, the day before a mortgage foreclosure sale was scheduled with respect to the debtors' home in Larchmont, New York, the debtors filed with this

court a joint petition for relief under Chapter 11 of the Bankruptcy Code. The debtors' major asset was their Mediterranean style home overlooking Long Island Sound, which they wanted to fix up and sell for between $750,000 and $1,000,000.

3. On January 28, 1986, this court ruled on a motion brought by Gibraltar Corporation of America, the holder of a claim of $954,356.08, of which $770,000 was secured, that cause had been established for converting the debtors' Chapter 11 case for liquidation under Chapter 7 of the Bankruptcy Code because of a continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation within the meaning of 11 U.S.C. § 1112(b)(1). *In re Greene,* 57 B.R. 272, 13 B.C.D. 1275 (Bankr.S.D.N.Y.1986). An order for conversion to Chapter 7 of the Code was entered on February 5, 1986, at which time the Chapter 7 trustee in bankruptcy ultimately sold the debtors' house at auction for $890,000.

4. On October 27, 1986, the debtor, Helena Greene, filed proofs of claim with the Clerk of the Bankruptcy Court purporting to reflect obligations which she and her husband allegedly owed to various persons, including three obligations to each of her three sons, each in the sum of $35,000, represented by three promissory notes dated June 1, 1979. The trustee's objections to the claims filed by the debtor, Helena Green, were sustained for lack of credible evidence, with the result that the claims were expunged by a ruling dated March 4, 1987. *In re Greene,* 71 B.R. 104 (Bankr.S.D.N.Y.1987).

5. Pursuant to a notice dated February 11, 1986, the court fixed May 6, 1986 as the last day for the filing of a complaint to determine the dischargeability of any debt pursuant to 11 U.S.C. § 523(c) and the last date for the filing of objections to the debtors' discharge pursuant to 11 U.S.C. § 727(a). On October 27, 1986, the debtors filed an amendment to the schedules annexed to their petition in order to list additional creditors who had not previously been scheduled, including the plaintiff, Maurice Baer. On November 26, 1986, the court entered an order extending the time for the newly added creditors to object to the debtors' discharge or the dischargeability of their claims. The last date for filing such objections was fixed as December 26, 1986.

6. On December 23, 1986, Maurice Baer, one of the newly added creditors, filed a complaint objecting to the debtors' discharge pursuant to 11 U.S.C. § 727(a). The Chapter 7 trustee joined in the complaint filed by Maurice Baer. Additionally, Maurice Baer objected to the dischargeability of his claim because of the debtors' alleged misappropriation of the bond which they pledged as security for rent due under business space which the debtors leased from Maurice Baer. The plaintiff contends that the debtors failed to account for the proceeds they received when they cashed in the rent security bond after they submitted to Smith Barney & Co., the transfer agent, a sworn affidavit that the bond which they had previously delivered to their landlord as security for rent was lost. The landlord's representative testified that the security bond was not lost and the funds that the landlord received upon submission of the original bond, in the sum of $13,482.50, had to be refunded to the transfer agent because the debtors had previously cashed in the replacement bond that they received after reporting the original bond as lost.

*Personal Financial Records*

7. After the debtors' Chapter 11 case was converted to Chapter 7, on February 5, 1986, the trustee in bankruptcy sent a printed form letter to the debtors requesting copies of their personal financial records and bank accounts. No personal financial records were turned over to the trustee.

8. On October 7, 1986, the trustee sent a second copy of her printed request for financial records directly to the debtors.

9. On January 16, 1987, the trustee obtained from this court an order directing the debtors to turn over to the trustee their financial records.

10. Thereafter, the trustee received a letter from the debtors' attorneys, dated

February 12, 1987, which lists records of corporations controlled by the debtors. [Exhibit # 5]. The letter referred to only one savings account which was stated to have a minimal balance. The letter stated that the debtors had no checking accounts. The debtors' attorneys did not refer to any checkings accounts in the individual name of either debtor.

11. Thereafter, the trustee served a subpoena on the court reporter in order to learn the name of the checking account used by the debtors to pay for copies of the transcripts they had ordered. The trustee learned that the debtor, Lawrence B. Greene, maintained a checking account with the Chemical Bank. The trustee then issued a subpoena on January 29, 1987, to the Chemical Bank and requested a listing of all checking accounts with the Chemical Bank upon which the debtors were authorized to sign checks.

12. Linda Lewis, an officer of the Chemical Bank, testified that in March of 1987, she received a telephone call from Mr. Greene who said that Chemical Bank should not supply the trustee in bankruptcy with the names of checking accounts for which the debtors were authorized signatories because such information violated his right of privacy. Thereafter, Helena Greene telephoned Ms. Lewis and said that the subpoena was not valid because Barbara Balaber–Strauss was not the trustee in bankruptcy of the corporations as to which the Greenes were the authorized signatories.

13. On March 13, 1987, Mr. Lawrence Greene wrote a letter to Chemical Bank objecting to Chemical's honoring the trustee's subpoena for financial documents. He voiced his objection in relevant part as follows:

Every person has rights under the constitution of the United States and you have violated these rights. Regardless if the party who sent you the subpoena was correct or incorrect in the manner in which they tried to get personal and confidential information, you have a responsibility to a depositor, before you turn over any information. You are a keeper of records, and as a keeper of records you can not turn over my records without my consent or knowledge or a Judicial order. You did not have any of the above, when you erred in turning over my personal and confidential records, & that I had permission of the Court to keep from public record you have violated not only my constitutional rights and my rights to privacy, but because of your actions I may be damaged and my family may be damaged. At this time I do not know to what extent that we will all be damaged. But because of your grave error I will hold you responsible for any and all damages that we will sustain do to your negligence.

14. Included in the bank statements produced was a checking account statement in the name of the debtor, Lawrence B. Greene, for the period from January 15, 1986 to February 15, 1986, reflecting a closing balance of $16,578.15. Information as to this account was not revealed by the debtors to the trustee in bankruptcy, notwithstanding that their Chapter 11 case was converted to Chapter 7 on February 5, 1986. Copies of the cancelled checks reflect approximately one-half were made out to cash.

15. The trustee also learned from the records furnished by Chemical Bank that for the period from February of 1985 through September of 1986, during the time that the debtors were in Chapter 13 and Chapter 11, they maintained an account known as Christopher Ames Ltd. The New York Secretary of State responded to the trustee in bankruptcy on March 27, 1987, advising her that no such corporation existed. The deposits in this account for the period from October 25, 1985 through November 26, 1985, totalled $12,923.11. For the period from March of 1986 through September of 1986, during the period that the debtors were in Chapter 7, many of the checks drawn on this account were made out to cash and were endorsed by the debtor, Helena Greene.

16. The trustee's subpoena to Chemical Bank also produced information that the debtor, Helena Greene, was an authorized

signatory on an account known as Finast Products, Inc. There were checks drawn on this account by Helena Greene and made payable to cash. As in the case of the account labelled Christopher Ames Ltd., the New York Secretary of State advised the trustee in bankruptcy that no corporation known as Finast Products, Inc. was incorporated in New York. [Exhibit # 20].

17. The concealment of the checking account maintained by the debtor, Lawrence B. Greene, which was opened in 1974, and the concealment of the accounts in the name of Christopher Ames Ltd. and Finast Products, Inc., neither of which were shown to exist as separately incorporated entities, although the debtors issued checks for cash in these accounts, were part of the plan of concealment which the debtors pursued during their Chapter 11 and Chapter 7 bankruptcy cases. When the debtors applied to the District Court to proceed in *forma pauperis,* the debtor, Helena Greene, concealed from the court the fact that the debtor, Lawrence B. Greene, was employed and received a take home income of approximately $4,000 per month.

## DISCUSSION

The debtors' objection to the complaint filed by Maurice Baer on the ground that it was not timely because it was filed after May 6, 1986, the last day originally fixed for filing complaints addressed to the debtors' discharge, lacks merit. Maurice Baer was not listed by the debtors as a creditor in the original petition. After the debtors amended their petition in November of 1986 to add Maurice Baer as a creditor, an order was entered by the court on November 26, 1986, extending the time for the newly listed creditors to file objections to the debtors' discharge until December 26, 1986. Maurice Baer timely filed his complaint, which the trustee joined as a participating plaintiff, on December 23, 1986.

### *Concealment of Financial Records*

■ Although a party objecting to a debtor's discharge has the burden under Bankruptcy Rule 4005 of proving his objection, this rule does not change the initial obligation which is placed upon a debtor of producing records from which the debtor's financial condition may be ascertained. Section 727(a)(3) of the Bankruptcy Code imposes a duty upon debtors to preserve or keep documentary evidence which would explain the debtor's financial condition. The creditors and the court need not be required to guess what actually occurred because such speculations do not serve as an adequate substitute for credible proof. *First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883, 888 (7th Cir.1983).

■ Objections to a discharge must be construed strictly against the objectant and liberally in favor of the debtor because the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start free from debt. *(Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999 (2d Cir.1976), *In re Kokoszka,* 479 F.2d 990, 996 (2d Cir.1973), *aff'd sub nom Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 *reh. denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *In re Tabibian,* 289 F.2d 793, 795 (2d Cir.1961). Nonetheless, in order to obtain the blessings of a general discharge the debtor must reveal and not conceal his financial condition. As stated in *In re Silverman,* 10 B.R. 727, 731 (Bankr.S.D.N.Y. 1981): "Complete disclosure is the touchstone...." This point was emphasized in *In re Underhill,* 82 F.2d 258, 259–260 (2d Cir.1936), *cert. den.,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936):

Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. *Nix v. Sternberg,* 38 F.(2d) 611 (C.C.A.8 [1930]) certiorari denied 282 U.S. 838, 51 S.Ct. 20, 75 L.Ed. 744; *In re Krulewitch,* 60 F.(2d) 1039 (D.C.N.J. [1932]) The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances.

Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. *Nix v. Sternberg, supra; Karger v. Sandler,* 62 F.(2) 80 (C.C.A.2 [1932]); *In re Miller,* 5 F.Supp. 913 (D.C.Md. [1932]).

In this case, not only have the debtors failed to turn over to the trustee any bank statements or cancelled checks which might reflect their financial condition, but they have failed to obey an order of this court dated January 16, 1987 which directed the debtors to turn over to the trustee, their records regarding their personal financial condition. Indeed, the debtors carried out a scheme of concealment of three checking accounts which they maintained. The Lawrence B. Greene account, which was opened before their Chapter 11 case and continued beyond their conversion to Chapter 7 on February 5, 1986, had a closing balance of $16,578.15 on February 15, 1986. Similarly the accounts which they maintained in the names of two non-existing corporations known as Christopher Ames Ltd. and Finast Products, Inc., which they used for personal purposes were concealed from the trustee. Significantly, the debtors directed the Chemical Bank, where these accounts were maintained, not to furnish the trustee in bankruptcy with any information as to these accounts.

Bankruptcy Rule 1019(5) requires that a Chapter 11 debtor in possession, in a Chapter 11 case that has been converted to Chapter 7, must "forthwith ... turn over to the Chapter 7 trustee all records and property of the estate in the possession or control of the debtor in possession...." The debtors maintained the three checking accounts with Chemical Bank, namely Lawrence B. Greene, individually, Christopher Ames Ltd. and Finast Products, Inc. during their Chapter 11 case but failed to turn over to the trustee in bankruptcy any records as to these accounts and tried to prevent Chemical Bank from furnishing information as to these accounts to the trustee in bankruptcy.

Not only have the debtors violated 11 U.S.C. § 727(a)(3) by not producing any books or records as to their financial condition, but they have also violated 11 U.S.C. § 727(a)(6) by refusing to obey the court order dated January 16, 1987, which directed them to turnover their financial records to the trustee. The debtors' failure to turnover their financial records and their concealment of the three checking accounts justifies the denial of their discharges. *In re Switzer,* 55 B.R. 991 (Bankr.S.D.N.Y. 1986).

In view of the fact that the debtors are not entitled to receive a discharge pursuant to 11 U.S.C. § 727, there is no point in addressing plaintiff Baer's additional charges as to the nondischargeability of his claim under 11 U.S.C. § 523.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2. The plaintiffs have sustained their burden of proof imposed by Bankruptcy Rule 4005 by clear and convincing evidence that the debtors have concealed recorded information from which their financial condition or business transactions might be ascertained as required by 11 U.S.C. § 727(a)(3).

3. The plaintiffs have sustained their burden of proof by clear and convincing evidence that the debtors knowingly and fraudulently withheld from the trustee in bankruptcy bank statements and cancelled checks with respect to three checking accounts which they used for their personal purposes, as proscribed under 11 U.S.C. § 727(a)(4).

4. The plaintiffs have sustained their burden of proof by clear and convincing evidence that the debtors have refused to obey a lawful order of this court, dated January 16, 1987, directing the debtors to turn over to the trustee their financial

records, as proscribed under 11 U.S.C. § 727(a)(6)(A).

SUBMIT ORDER ON NOTICE in accordance with the foregoing.