In re Lawrence B. GREENE and Helena Greene, Debtors.

Lawrence B. GREENE and Helena Greene, Appellants,

v.

Barbara BALABER–STRAUSS as Trustee and Maurice Baer, Appellees.

Nos. 85 B. 20497 (HS), 87 Civ. 8381 (GLG).

United States District Court, S.D. New York.

July 19, 1989.

Munves, Tanehaus & Storch, P.C., Russell Munves, Solomon Jaskiel, New York City, for appellants.

Barbara Balaber–Strauss, P.C. by Barbara Balaber–Strauss, trustee, pro se.

No appearance by appellee Baer.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Appellants present what appear to be rather novel arguments on this appeal in an attempt to confine the bankruptcy court's ability to extend the deadline fixed by the Bankruptcy Rules for the filing of both complaints asserting the non-dischargeability of individual debts under 11 U.S.C. § 523(c) and objections to overall discharge under 11 U.S.C. § 727(a). We are referred to no case law which specifically addresses

the arguments made herein. We need not be the first. Whatever the merits of appellants' arguments, they are obviated by our holding that the action taken by the bankruptcy court in extending the deadline for filing complaints or objections to discharge was justified as an exercise of the court's authority to modify deadlines, *sua sponte*, in the interest of preventing abuse of the bankruptcy process.

## I. BACKGROUND

The debtors (appellants herein) were owners and/or operators of various business entities involved with the manufacture of zippers. The zipper business, by its very nature, is up and down, and it appears that it was more down than up for the debtors. On October 21, 1985, the debtors filed a joint Chapter 11 petition in the bankruptcy court of this district, which case subsequently was converted to Chapter 7 on motion of the debtors' principal creditors. *In re Greene*, 57 B.R. 272, 278 (Bankr.S.D.N.Y.1986).[1]

The major asset of the estate was a once luxurious but then dilapidated 14–room home in Larchmont, New York overlooking Long Island Sound. At the time of the Chapter 11 filing, debts owing to the first and second mortgagees had gone unpaid for a lengthy period of time, as had taxes and insurance premiums on the property. On April 18, 1985, the first mortgagee obtained a foreclosure judgment on the property in New York Supreme Court. The Chapter 11 petition was filed on the day before the scheduled foreclosure sale. After what can only be characterized as obstreperous behavior by the debtors designed quite obviously to delay or thwart the liquidation of the estate's only substantial asset, the property finally was sold at public auction pursuant to court order on July 22, 1986.[2]

The troubling response engendered by the trustee's court-ordered efforts to sell the debtors' property is not the only aspect of concern in this Chapter 7 case. Pursuant to and consistent with Bankruptcy Rules 4004 and 4007, the bankruptcy court issued a notice to creditors dated February 11, 1986 ("February 11 Notice") which fixed May 6, 1986 as the last day on which interested parties could file complaints to determine the dischargeability of any debt or object to the debtors' overall discharge under 11 U.S.C. §§ 523(c) & 727(a), respectively. That period expired with no complaint or objection to discharge having been received by the court. A discharge hearing had been scheduled pursuant to the February 11 Notice for May 13. For reasons not entirely clear (but, in any event, not material here), the discharge hearing was adjourned (perhaps more than once) until some future date(s).

On October 13, 1986, prior to entry of a discharge order, Maurice Baer unexpectedly filed a motion on notice to the debtors to be added as a creditor in the case. It appears that Baer leased space to the debtors for operation of their business. His claim is for $80,000 based on the debtors' alleged misappropriation of a bond pledged by the debtors as security for rent due under the lease. Evidence ultimately was presented to the bankruptcy court which suggested that the debtors failed to account for proceeds they realized when they cashed in the bond after submitting a sworn affidavit to the transfer agent that the bond was lost.

Baer was not listed on the original schedule of creditors filed by the debtors. Indeed, he learned of the Chapter 7 case only after initiating an action in state court

---

1. An earlier attempt by the debtors to avail themselves of Chapter 13 had been dismissed. *Id.* at 273.

2. We will not belabor the reader with a full recitation of the litany of obstructionist tactics engaged in by the debtors in their attempts to forestall or block the sale. We note simply that the sale and "eviction" of the debtors were accomplished only after issuance of several court orders necessitated by the debtors' intransigence. Several aspects of these various orders were the subjects of appeals by the debtors, often in a *pro se* capacity (one such *pro se* appeal actually enjoyed a brief but unsuccessful presentation, allegedly *ex parte* and without notice to the trustee, before Supreme Court Justice Thurgood Marshall), but all legal actions taken by the trustee related to the sale were affirmed.

against the debtors and the now-defunct business lessee they operated. Upon receipt of the summons and complaint in that action, and by letter dated September 1, 1986, the debtors advised Baer's counsel of the pending Chapter 7 case. Thereafter, Baer filed his motion, made returnable October 31, to be added as a creditor.

On October 27, two weeks *after* Baer's motion was served and just four days before it was scheduled to be heard, the debtors filed an amended schedule of creditors listing, among others, Baer. Also added were claims by the debtors' three sons, each for the amount of $35,000 in alleged loans made to the debtors/parents, as well as claims by Helena Greene's father and sister. Pursuant thereto, the bankruptcy court issued a notice to the newly listed creditors advising them that they had been listed in the amended schedule and that December 26, 1986 had been fixed as the last day on which they could file complaints or objections under 11 U.S.C. §§ 523(c) & 727(a) ("October 27 Notice").[3]

On the morning of October 31, argument on Baer's motion went forward as scheduled.[4] The debtors, who were then proceeding *pro se*,[5] failed to show for that argument. The court granted Baer's motion, and went on to note that the court "will extend" until December 26 the time for filing complaints or objections to discharge. At that point, the trustee asked, "Will that extension of time enure to the benefit of the trustee as well insofar as this is a new claim by a new creditor of which the trustee was unaware?" The court responded, "Yes. You can put that in the order." An order granting Baer's motion and setting the deadline for com-

plaints or objections at December 26 was entered by the bankruptcy court on November 26, 1986 ("November 26 Order").[6]

On December 23, 1986, within the deadline set by the court, Baer and the trustee jointly filed a complaint objecting to the dischargeability of Baer's debt under 11 U.S.C. § 523(c) and objecting to the debtors' overall discharge under 11 U.S.C. § 727(a). The bankruptcy court denied the discharge under 11 U.S.C. § 727(a) and, as a result thereof, found it unnecessary to reach Baer's individual claim under 11 U.S.C. § 523(c). *Baer v. Greene (In re Greene)* 81 B.R. 829, 834 (Bankr.S.D.N.Y. 1988). In reaching that conclusion, the bankruptcy court found clear and convincing evidence that the debtors had concealed assets and information from the trustee and, in the process of doing so, had violated a previous order of the court directing the debtors to turn over to the trustee a complete set of financial records. *Id.*

## II. DISCUSSION

In this consolidated appeal, the debtors challenge three aspects of the decision denying discharge which we consider *seriatim*.

### 1. The bankruptcy court lacked jurisdiction to entertain the joint complaint

The principal issue raised on this appeal is that the joint complaint filed by Baer and the trustee was untimely and that the November 26 Order permitting its late filing was issued without authority. It is argued, therefore, that the bankruptcy

---

3. On March 4, 1987, and on motion of the trustee, the bankruptcy court expunged the claims asserted in the amended schedule of creditors. *See In re Greene*, 71 B.R. 104 (S.D.N.Y.1987). That decision did not operate to affect Baer's claim which, as will be discussed *infra*, by that time expressly had been added by court order.

4. Debtors' counsel suggests that the October 31 argument was gratuitous in light of the October 27 amended filing. More to the point, counsel makes much of the debtors' "voluntary" amendment, presumably implying that it constitutes an expression of the debtors' good faith. To the

contrary, that the amended filing appears to be a calculated response forced by Baer's intervention seems obvious both from the timing and substance of the amended schedule.

5. Original, court-appointed counsel had since withdrawn, citing philosophical differences with their clients.

6. The written order makes no specific mention of the court's decision, expressly made on the record, to allow the extension to operate for the benefit of the trustee as well.

court lacked jurisdiction to entertain the joint complaint.

The nub of counsel's argument is as follows. Under Bankruptcy Rule 4004(a), "a complaint objecting to the debtor's discharge under [11 U.S.C.] § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to [11 U.S.C.] § 341(a)." Paragraph (b) of that rule adds: "On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired." Similar conditions are set forth for the filing of complaints objecting to the discharge of individual debts under 11 U.S.C. § 523(c). *See* Bankruptcy Rule 4007(b). Counsel notes that these requirements are strictly applied so that the salutary purpose of the "fresh-start" principle will be given effect and the debtor will not be left forever exposed to the assertion of creditors' claims. *See* 8 *Collier on Bankruptcy* ¶ 4004.04[1], at p. 4004–12 (1989) (and cases cited therein); *id.* ¶ 4007.05, at p. 4007–13 (and cases cited therein).

In this case, pursuant to the February 11 Notice, the court had correctly fixed the filing deadline at May 6, 1986 consistent with the above rules. Neither the trustee nor any creditor had filed a complaint or objection pursuant to 11 U.S.C. §§ 523(c) or 727(a) by that deadline, nor had any party in interest made a motion for extension for cause. Counsel argues, therefore, that the joint complaint was untimely and any court action or order permitting its filing was without authorization.

Counsel emphasizes that strict adherence to these limitations creates no unfairness, at least as to Baer, since the Code accommodates the interests of creditors not listed in the original schedule who become aware of the bankruptcy after discharge. Under 11 U.S.C. § 523(a)(3), a Chapter 7 "discharge" will not operate to discharge a debtor from any debt not listed in the schedule of creditors

in time to permit—

> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection [generally dealing with debts incurred through fraud or defalcation or child or spousal support], timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such filing and request....[7]

Thus, it is asserted, Baer's claim would have been protected from discharge so long as he can demonstrate that he had no knowledge of the case so as to permit the timely filing of a proof of claim and complaint. Consequently, debtors' counsel argues, to the extent the joint complaint urged that Baer's claim was nondischargeable under 11 U.S.C. § 523(c), the complaint was both untimely and unnecessary since Baer's claim is deemed nondischargeable by 11 U.S.C. § 523(a)(3).[8]

---

**7.** In addition, Bankruptcy Rule 1009 provides that a schedule of creditors may be amended voluntarily by the debtor at any time before the case is closed or on motion by an interested party. The 1983 Advisory Committee note to that rule states: "If a list is amended to include an additional creditor, the effect on the dischargeability of the creditor's claim is governed by the provisions of § 523(a)(3) of the Code." 8 *Collier on Bankruptcy* ¶ 1009.01[1], at p. 1009–2 (1989). Thus, although by its terms 11 U.S.C. § 523(a)(3) is triggered only after "discharge," counsel argues that the comment to Rule 1009 contemplates application of the section's provi-

sions pre-discharge but post-filing deadline as well. *But see* W. Norton, Jr., *Bankruptcy Law and Practice: Bankruptcy Rules* 254 (1987–88 ed.) (Editors' Comment (1983) on Rule 4004) (noting "distinguishing feature of Code § 523 is that it comes into play only if a debtor receives a general discharge under Code § 727").

**8.** We emphasize here that the protection afforded Baer by counsel's construction of the Bankruptcy Code and Rules is not so automatic as implied. Baer must be able to demonstrate that he had no notice or knowledge of the case in time to permit filing of a proof of claim or

As to that part of the complaint which objects to the debtors' discharge under 11 U.S.C. § 727(a), counsel contends that Baer had no such right to object. Bankruptcy Rule 4007(c) provides that a "complaint other than under [11 U.S.C.] § 523(c) may be filed at any time," thereby protecting creditors utilizing 11 U.S.C. § 523(a)(3) from any arbitrary filing deadline. Rule 4004, however, which implements 11 U.S.C. § 727(a), contains no similar waiver of the filing deadline. It is counsel's contention that this omission is not merely a "gap" in the law; rather, counsel argues that this represents a conscious choice by Congress reflecting a balancing of the debtor's need for a reasonably timely realization of the fresh-start goal with the creditor's right to protection of his or her property interest. Since the latter is protected by 11 U.S.C. § 523(a)(3), it is urged, Congress did not see the need to prolong the Chapter 7 case and preserve for a creditor in Baer's position the additional right to object to the debtor's overall discharge. Since Baer allegedly did not have that right, it follows that the trustee could not "piggyback" on Baer's non-existent right and late-file an objection under 11 U.S.C. § 727(a).[9]

Counsel has made a commendable effort to frame this appeal in the legal light most favorable to the debtors, and it appears there is virtually no case law addressing the specific argument advanced.[10] Whatever the merits of counsel's position, however (and we do not pass upon them), such arguments may only be put forth in the context of a Chapter 7 proceeding that has been pursued in good faith by the debtor. *See In re Greenwalt*, 63 B.R. 555, 558–59 (Bankr.D.Colo.1986) (noting Chapter 7 discharge can be utilized only by debtor who has not abused the process). Notwithstanding counsel's efforts to mask the reality of this case, information came to the bankruptcy court's attention prior to issuance of the November 26 Order that certainly would give rise to suspicions that the process was being abused by the debtors. Given that reality, a different analysis must follow.

■ Under 11 U.S.C. § 105(a), the bankruptcy court is provided a vehicle allowing "broad exercise of power in the administration of a bankruptcy case." 2 *Collier on Bankruptcy* ¶ 105.01, at p. 105–1 (1989). That provision provides in full (emphasis added):

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any

---

complaint on dischargeability. Counsel's retort, obviously, is that if Baer cannot meet that threshold he should not be allowed the benefit of an extension which will operate at the debtor's expense by delaying discharge.

**9.** Counsel also argues that even if Baer could file an objection under 11 U.S.C. § 727(a), the trustee is nevertheless prevented from "piggybacking" on that right. Alternatively, counsel contends that for Baer (and, derivatively, the trustee) to exercise objection rights, he must at minimum have filed a motion consistent with the spirit of Bankruptcy Rule 4004(c) seeking court permission to object. Given our ultimate holding, we need not pass upon the propriety of either these additional arguments or the principal argument herein advanced.

**10.** Appellants cite numerous cases holding that the filing deadline cannot be revived or extended once expired. *See, e.g., In re Klein*, 64 B.R. 372, 375–76 (Bankr.E.D.N.Y.1986) (collecting cases). These holdings are inapposite, however, since the creditors seeking extensions in those cases had knowledge of the bankruptcy prior to the filing deadline. The only case to which we are referred that is directly on point is *In re Eliscu*, 85 B.R. 480 (Bankr.N.D.Ill.1988). *Eliscu* holds that, in order to ensure that the creditor's Fifth Amendment property and due process rights are protected, a court may extend the filing deadline for those creditors who become aware of the bankruptcy after the filing deadline passes. *Id.* at 482. The trustee relies primarily on this case and its constitutional concerns. Simple reliance on *Eliscu*, however, fails to come to grips with appellants' primary contention, to wit, that Baer's Fifth Amendment property rights *are* fully protected by 11 U.S.C. § 523(a)(3). Indeed, on that basis, appellants argue that *Eliscu*, which does not truly address this argument, was wrongly decided. We are not prepared to go that far. A considerable argument can be made that appellants have simply hit on a "gap" in the law, and that the bankruptcy court has inherent authority to bridge that gap.

action or making any determination necessary or appropriate to enforce or implement court orders or rules, *or to prevent any abuse of process.*

Notwithstanding the existence of filing deadlines and the requirements for motions seeking extensions therefrom, we think that 11 U.S.C. § 105(a) commits to the sound discretion of the bankruptcy court the authority to take the actions embodied in the October 27 Notice and November 26 Order, *sua sponte,* in the interests of protecting the process from possible abuse. *Cf. In re Klein,* 64 B.R. 372, 376–77 (Bankr.E.D.N.Y.1986) (and cases cited therein) (noting court may utilize its equitable authority and extend filing deadline to correct administrative errors when creditors have no knowledge of those errors). That authority, in our view, includes the court's decisions here both to allow Baer the option of filing a complaint or objection pursuant to 11 U.S.C. §§ 523(c) or 727(a) and to allow the trustee to piggyback on the latter.[11]

That this case evinced a potential abuse of process when the October 27 Notice and November 26 Order issued is manifest from the record of this proceeding.[12] For example, Baer filed his motion to be added as a creditor on October 13. For all intents and purposes, that motion was tantamount to filing a proof of claim. *See* Bankruptcy Rule 3001.[13] The bankruptcy court, therefore, would not be exceeding its discretion by according that filing certain weight. *Cf.* Bankruptcy Rule 3001(f) (noting proof of claim "shall constitute prima facie evidence of the validity and amount of the claim"). Consequently, not only can the filing reasonably be deemed to have raised questions as to why Baer was not listed on

the original schedule of creditors, but the motion's substance certainly raised suspicions that the debtors had concealed relevant information and/or assets.

Further, and arguably in response to Baer's intervention, the debtors' filed an amended schedule of creditors which listed, among others, claims by the debtors' three sons and claims by Helena Greene's father and sister. Given its timing and content, the amended schedule fairly raised additional suspicions that the process was being used for purposes other than a good-faith effort to secure a fresh start.

Moreover, as outlined *supra,* the utterly obstreperous behavior of the debtors in hindering the trustee's efforts to liquidate the only revealed asset of the estate of any substance (the Larchmont property) suggests a calculated desire to benefit from the automatic stay for an indefinite period by blocking any meaningful progress in the Chapter 7 proceeding. Indeed, after sale of the property in September 1986, the debtors immediately applied for homestead exemptions under 11 U.S.C. § 522(f). Hearings were held on these requests on October 14 and 15, two weeks before issuance of the October 27 Notice, and again on November 12, two weeks before issuance of the November 26 Order. The bankruptcy court ultimately denied payment of the exemptions until the trustee was required to make distributions under 11 U.S.C. § 726. Judge Sweet affirmed that order on appeal, stating: "Here, the transcripts of the hearings before the bankruptcy judge evidence a concern on the court's part that these appellants may have abused the process and may not be the 'honest debtors' who are entitled to dis-

---

**11.** In fact, we think as a matter of law that any extension of the deadline for objections under 11 U.S.C. § 727(a) would automatically run to the trustee as "representative of the estate." 11 U.S.C. § 323(a). Such a right would be limited to 11 U.S.C. § 727(a) since the trustee does not have standing to establish the non-dischargeability of an individual debt under 11 U.S.C. § 523(c). *In re Farmer,* 786 F.2d 618, 620 (4th Cir.1986).

**12.** Discovery conducted by the trustee after filing of the joint complaint confirmed the scurri-

lous nature of certain of the debtors' actions in this case, and revealed additional transgressions. *See In re Greene,* 81 B.R. 829, 831–33 (Bankr.S.D.N.Y.1988). For purposes of the instant argument, however, we must confine ourselves to those matters brought to the bankruptcy court's attention prior to issuance of the November 26 Order. To do otherwise would be an exercise in post hoc reasoning.

**13.** The motion included an affidavit by Baer's counsel outlining the bases for Baer's claim.

charge and exemption.... Under these circumstances, the decision to withhold the exemptions can be deemed reasonable, and the Greenes' appeal is denied." *Greene v. Balaber–Strauss,* 76 B.R. 940, 942 (S.D.N.Y.1987).

Thus, when the bankruptcy court issued its October 27 Notice and November 26 Order, it had numerous indicia before it suggesting that the process potentially had been and was being abused. Obviously, the bankruptcy court did not know with certainty at those times that the process was being abused. Certainty, however, is not the pertinent standard. The decision as to whether the bankruptcy court should exercise its authority under 11 U.S.C. § 105(a) in a given case is committed to the sound discretion of that forum, which is in the best position to evaluate the various aspects and subtleties of the pending proceeding. Consequently, we find that unless it can be demonstrated that the court abused that discretion, the court's reasonable exercise of its equitable authority under 11 U.S.C. § 105(a) should not be disturbed. There were more than sufficient indicia suggesting the need to extend, *sua sponte,* the filing deadline in this case, and the court's decision in that regard was not, therefore, an abuse of its discretion.

In addition, the specific action taken—extending the deadline until December 26, 1986—also did not constitute an abuse of the court's discretion. When exercising its equitable authority to extend the deadlines set by Bankruptcy Rules 4004 and 4007, the court must remain sensitive to dual concerns that, in our view, are neither competing nor incompatible: the need to ensure the integrity and fairness of the process while at the same time providing assurance to the debtor that the fresh-start goal will be reasonably and timely realized, barring complications, if the process is utilized in good faith. Those concerns were satisfied here. The December 26 date described in the October 27 Notice, and ratified by the November 26 Order, did not come out of thin air. That date obviously was fixed in contemplation of a 60–day filing period pegged to the October 27 amended schedule, and that 60–day time frame finds its genesis in the spirit of Bankruptcy Rules 4004 and 4007. Each of those rules provides a self-executing deadline for the filing of complaints and objections under 11 U.S.C. §§ 523(c) & 727(a)— "not later than 60 days following the first date set for the meeting of creditors held pursuant to [11 U.S.C.] § 341(a)." By using the filing date of the amended schedule of creditors as the relevant referent, the bankruptcy court defined a new 60–day period in which newly added creditors could file individual complaints and, coupled with the trustee, overall objections. That period of time would not so unreasonably delay the possibility of discharge as to render the court's action an abuse of discretion. To the contrary, we think that specific application of the court's authority under 11 U.S.C. § 105(a) was entirely appropriate within the context of this case.

We recognize that the court's actions in extending the filing deadline in this case appear to have been taken as a matter of course. Thus, the October 27 Notice which originally set the extension and fixed the December 26 date appears to be a standard form that is made applicable to the facts of a particular case and is then sent out to newly added creditors any time creditors are added in a pending proceeding. Whether a bankruptcy court has the authority to do this prior to discharge but after the original deadline has passed, justifying its actions as a means of bridging whatever "gap" allegedly may exist under current law, is a matter we do not decide. The actions of the bankruptcy court in this case were justified, at minimum, under the authority provided by 11 U.S.C. § 105(a) in the interest of protecting the process from abuse, and on that basis they are affirmed.

Consequently, we find that the bankruptcy court had jurisdiction to entertain the joint complaint at issue and appellants' first challenge to the underlying decision is rejected.

### 2. A new trial is warranted due to the trustee's discovery violations

In anticipation of the trial on the joint complaint, the debtors' counsel served an interrogatory on the trustee requesting copies of any bank records the trustee had obtained as well as any other documents she intended to introduce at trial.[14] The trustee responded that she was not obligated to prepare the debtors' case and that, in any event, whatever documents she had discovered were known and equally available to the debtors (since she had discovered only the debtors' own records). Appellants contend that this refusal to turn over documents prejudiced their case at trial, and the bankruptcy court's failure to sanction the trustee's behavior should result in a new trial. We reject that contention. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2174, at 552 & n. 93 (1970 & Supp.1988) (if evidence "is equally available to both parties, the party seeking the information should do his own research"). In addition, much of this material constituted rebuttal and impeachment evidence that is not generally required to be disclosed.

### 3. The decision below is clearly erroneous

This claim is completely without merit. The trustee more than met her burden of showing that the debtors had concealed records and otherwise acted in a manner dictating denial of discharge. On the merits, we generally adopt the sound reasoning of the bankruptcy court's decision, *In re Greene*, 81 B.R. 829 (Bankr.S.D. N.Y.1988).[15]

14. The trustee learned, through subpoena on the court reporter designed to determine the name on the checking account that was being used by the debtors to pay for court transcripts, that Lawrence Greene had a checking account in his name at Chemical Bank that had not been revealed. A subsequent subpoena was served on the bank to learn more about the account, which led to further questionable conduct by the Greenes. *See In re Greene*, 81 B.R. 829, 832 (Bankr.S.D.N.Y.1988).

15. The debtors object that certain of the facts cited by the bankruptcy court are erroneous,

*Conclusion*

For all of the above reasons, the actions of the bankruptcy court subject to this consolidated appeal are affirmed.

AFFIRMED.

and reliance on those misunderstandings of events fatally infected the decision. We have thoroughly reviewed the factual record, and any reliance on factual misstatements in this case obviously constitutes nothing more than harmless error. There are more than sufficient unrebutted, "hard" facts that warranted the bankruptcy court's decision denying discharge. Notwithstanding counsel's heroic effort to obfuscate the reality of this case by magnifying any alleged factual errors, the "hard" facts tell a different story. As Ebenezer Elliott once said, "Facts are stubborn things."