CORNELIA G. KENNEDY, Circuit Judge.
 

 In this Chapter 11 proceeding the Bankruptcy Court, 29 B.R. 299, affirmed by the District Court, held that Mark S. Bratton’s products liability claim for the loss of four fingers was barred for failure to timely file a proof of claim. Bratton contends that his claim should not be barred because he did not receive notice of the latest date for filing proofs of claim.
 

 In 1981, Yoder filed a petition requesting relief under Chapter 11 of the Bankruptcy Code. At that time Bratton’s products liability suit against Yoder was pending in a Michigan state court. Bratton’s claim was listed as a “contingent, unliquidated and disputed” claim in the amended schedule of assets and liabilities filed by Yoder. The Bankruptcy Court issued an order setting July 13, 1981 as the last date for creditors to file proofs of claim against Yoder (the “bar date”).
 

 Bratton filed a proof of claim on March 15, 1982, about eight months after the bar date. Yoder applied to the Bankruptcy Court for an order expunging certain products liability claims, including Bratton’s. Following a hearing on Yoder’s application, at which Bratton was represented, the Bankruptcy Court found that Bratton had been sent sufficient notice of the bar date and that Bratton’s failure to file timely proof of claim was not due to excusable neglect. Bratton’s claim was therefore barred. The District Court affirmed, and Bratton appeals.
 

 Rule 3001 of the Interim Bankruptcy Rules (which are applicable to this proceeding) provides that: “A proof of claim may be filed at any time prior to the approval of the disclosure statement unless a different time is fixed by the court on notice as provided in Rule 2002.” Interim Bankruptcy Rule 2002 provides that “the clerk of the bankruptcy court shall give notice by mail to the debtor, all creditors, equity security holders and indenture trustees of ... the time allowed for filing claims pursuant to Rule 3001.” It is undisputed that Bratton’s proof of claim was filed after the court-ordered bar date but before approval of the disclosure statement. The remaining question is whether notice of the bar date was sent to Bratton. A creditor’s knowledge that a reorganization of the debtor is taking place does not substitute for mailing notice of a bar date.
 
 *1117
 

 New York v. New York, New Haven & Hartford Railroad Co.,
 
 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).
 

 Thé* Bankruptcy Court heard evidence concerning the procedure used to mail notices.
 
 [1]
 
 of the bar date. An employee’of Yoder testified that he supervised a procedure through which an address label was prepared at Yoder for each creditor listed in Yoder’s amended schedule of assets and liabilities, and that the employee and an accountant proofread the address labels to make sure that all listed creditors were included. The address labels and corresponding notices were taken to the clerk of the Bankruptcy Court. Using labels and envelopes, it received from the Bankruptcy Court, the Cleveland Letter Service then prepared and mailed the notices. No record of the address labels actually prepared was kept by Yoder, the Bankruptcy Court, clerk, or the Cleveland Letter Service; and neither the clerk’s office nor the Cleveland Letter Service checked the labels against any list of creditors. Bratton’s name and address did not appear on the matrix of creditors that was filed earlier with the Bankruptcy Court. The courtroom deputy docket clerk testified that she did not know whether the labels sent to the Cleveland Letter Service were the labels prepared by Yoder or labels prepared from the matrix in the court’s file.
 

 Bratton’s address on the amended schedule of assets and liabilities, the list which Yoder’s employee testified was used to prepare the labels, was that of his attorney, A.T. Ornstein. Ornstein testified that he •had not received notice of the bar date. Attorneys for two other listed products liability claimants also represented that they and their clients had not received notices of the bar date.
 

 The Bankruptcy Court made a factual finding that notice of the bar date had been sent to Ornstein.
 
 [1]
 
 The Court did not discuss its reasons for this finding or explain how it weighed the evidence, although the evidence concerning mailing was far from undisputed. Testimony of non-receipt is evidence that the notice was not mailed.
 
 Simpson v. Jefferson Standard Life Insurance Co.,
 
 465 F.2d 1320, 1323 (6th Cir.1972). We do not need to decide whether the finding that notice was mailed was clearly erroneous, however, because we hold that the Bankruptcy Court abused its discretion in holding that Brat-ton-did not file a late proof of claim as a result of excusable neglect.
 
 [2]
 
 This holding was based on the closely related finding that Bratton’s attorney received the notice, which we hold to be clearly erroneous.
 

 Rule 906(b) of the Rules of Bankruptcy Procedure provides that a time period may be extended if failure to act in time “was thé"result of excusable neglect.”
 
 [3]
 
 The parties disagree over the definition of excusable neglect: Yoder urges as a defini
 
 *1118
 
 tion “the failure
 
 to
 
 timely perform a duty due to circumstances beyond the reasonable control of the person whose duty it was to perform”; Bratton suggests a less restrictive definition.
 
 [4]
 
 Under even Yoder’s definition, however, nonreceipt of notice would clearly constitute excusable neglect. The Bankruptcy Court’s determination that no excusable neglect existed was based entirely on its finding that notice was received at Bratton’s attorney’s law firm. We thus turn to the question of whether this finding of receipt was clearly erroneous.
 

 The Bankruptcy Court relied mainly on a presumption of receipt that it held arose from evidence that the notice was properly' mailed. The common law has long recognized a presumption that an item properly mailed was received by the addressee.
 
 Hagner v. United States,
 
 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The presumption arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail.
 
 Simpson v. Jefferson Standard Life Insurance Co.,
 
 465 F.2d 1320, 1323 (6th Cir.1972). For purposes of this discussion, we will assume that the presumption of receipt did arise.
 

 The District Court held that the presumption had not been rebutted, reasoning that “testimony amounting to a mere denial that a properly mailed notice was not received is insufficient to rebut the presumption of receipt.”
 
 [5]
 
 This statement is inconsistent with prior decisions of this Circuit. In
 
 McKentry v. Secretary of HHS,
 
 655 F.2d 721 (6th Cir.1981), the plaintiff and her attorney both filed affidavits that they had not received a notice of reconsideration from the Department of HHS. This Court held that this would have been sufficient evidence of non-receipt to rebut the presumption of mailing, had it arisen.
 
 [6]
 
 In
 
 Baldwin v. Fidelity Phenix Fire Insurance Co.,
 
 260 F.2d 951, 953 (6th Cir.1958), there was evidence that a notice had been sent to an insurance company and to one of its agents. The agent testified that he had not received the notice. This Court held that the evidence was sufficient to support the jury’s finding that notice was not received by the insurance company or the agent. These decisions are in consonance with the general proposition that a presumption is rebutted “upon the introduction of evidence which would support a finding of the nonexistence of the presumed fact.” 10
 
 Moore’s Federal Practice
 
 § 301.04[2] (2d ed.). Testimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt.
 

 The next question is whether the presumption, once rebutted, retains any effect.
 
 [7]
 
 The Bankruptcy Court found that it was “entitled to presume that notice has been received once a proper mailing is made, even though the intended recipient testifies that the notice never really came.” The Bankruptcy Court reasoned as follows:
 

 According to the note of the Advisory Committee on Proposed Rules, Federal Rule 301 rejects the so-called “bursting bubble” theory, under which a presumption vanishes upon the introduction of
 
 *1119
 
 evidence that negates the existence df the presumed fact. According to the Federal Rule, when evidence is put forth negating the fact that the presumption tends to support, the presumption still continues and is evidence to be weighed and considered with all of the other evidence in the case.
 

 Federal Rule of Evidence 301 provides in part:
 

 [A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the pai;ty on whom it was originally cast.
 

 A brief review of the history of this rule will aid in evaluating the Bankruptcy Court’s reasoning. Before adoption of the Federal Rules of Evidence there were two major (theories concerning the effect of a presumption once rebuttal evidence is- admitted. Under the Thayer or “bursting bubble” theory a presumption vanishes entirely once rebutted, and the question must be decided as any ordinary question of fact.
 
 [8]
 
 ' Under a later theory, proposed by Morgan, a presumption shifts the burden of proving the nonexistence of the presumed fact to the opposing party.
 
 [9]
 

 The version of Rule 301 that was proposed by tbe Advisory Committee, accepted 'by the Supreme Court, and submitted to Congress adopted the Morgan view.
 
 [10]
 
 " That rule, however, was not enacted by Congress. The Advisory Committee notes, caf which the Bankruptcy Court relied, that reject the “bursting bubble” theory pertain to the proposed rule, which was not enacted, and are thus of little help in interpreting the final rule.
 

 The House of Representatives adopted a rule espousing an intermediate view, which would allow a rebutted presumption to be considered evidence of the fact presumed.
 
 [11]
 

 See
 
 H.R.Report No. 93-650, House Committee on the Judiciary, U.S.Code Cong. & Admin.News 1974, p. 7051. The Senate criticized the House rule on the ground that it made no sense to call a presumption evidence, and adopted the present language of Rule 301, which was adopted by the Conference Committee and enacted into law.
 
 See
 
 S.Report No. 93-1277, Senate Committee on the Judiciary; H.R.Report No. 93-1597, Conference Committee, U.S. Code Cong. & Admin.News 1974, p. 7051.
 

 Most commentators have concluded that Rule 301 as enacted embodies the Thayer or “bursting bubble” approach.
 
 See, e.g., 10 Moore’s Federal Practice
 
 § 301.04[4.-1] (2d ed.); 1
 
 Weinstein’s Evidence
 
 301-12; IX
 
 Wigmore on Evidence
 
 § 2493h (Chadbourn rev. 1981).
 
 [12]
 

 Contra
 
 21 C. Wright & K. Graham,
 
 Federal Practice and Procedure
 
 §§ 5121, 5122, 5126.
 
 [13]
 
 
 *1120
 
 At least two other circuit courts have expressly agreed.
 
 Reeves v. General Foods Corp.,
 
 682 F.2d
 
 515, 522 n. 10
 
 (5th Cir.1982);
 
 Legille v. Dann,
 
 544 F.2d 1, 6-7 (D.C.Cir.1976). The Thayer view is consistent with the language of Rule 801, which provides only that a presumption shifts “the burden of going forward with evidence to rebut or meet the presumption.” Accordingly, we hold that a presumption under Rule 301 has no probative effect once rebutted. The Bankruptcy Court therefore erred in considering the presumption as evidence of receipt.
 

 The only other evidence of receipt, expressly considered by the Bankruptcy Court was that “Mr. Bratton’s law firm did receive and respond to the notice setting debtor’s objection to his claim for hearing.” However, there was no evidence that the notices of the hearing were sent to the same addresses as were the notices of the bar date, which were sent more than a year earlier. The testimony was that no copy of the address labels made up for the bar date notices was kept, so a copy of those labels could not have been used to mail the later notices of the hearing on debtor’s objections to claims. That Bratton received notice of the hearing is therefore not evidence that he received notice of the bar date.
 

 The Bankruptcy Court erred in relying upon the presumption and notice of the hearing to establish receipt. Had it properly considered all the evidence it would have had to find that Bratton had not received notice.
 

 Bratton’s attorney, to whom the notice was purportedly addressed, testified directly that he did not receive the notice. The only evidence tending to establish receipt of notice is testimony of a Yoder employee that he and employees under his supervision prepared address labels corresponding to all creditors listed in Yoder’s amended schedule of assets and liabilities. Bratton was listed on that schedule. These labels were then taken to the Bankruptcy Court by Yoder’s attorney. A Cleveland Letter Service employee testified that the notices were mailed using labels received from the Bankruptcy Court.
 

 The evidence in the record, however, does not establish that the labels prepared by Yoder were the ones the Bankruptcy Court sent to the Cleveland Letter Service.
 
 *1121
 
 The Bankruptcy Court deputy clerk testified that it was possible that labels prepared from the matrix of creditors’ addresses alrekfly in the file were used, and that she had no record or recollection of wheffier these labels or the ones supplied by Yoder were sent to the Cleveland Letter Service. The clerk also testified that Bratton was raoi'listed on the matrix in the file. Thus, it is equally likely that either set of labels was used.
 

 Even if the labels supplied by Yoder were used, there is only weak circumstantial .evidence that there was a label for Bratton. No record of the actual labels made up was kept. Yoder’s employee testified that he checked the labels against the amended schedule, but there were 1,442 labels and a mistake could easily have been made. There was testimony that the matrix Of creditors’ addresses, which did not include Bratton’s, was also supplied by Yo-der. Since Yoder mistakenly omitted Brat-ton from the matrix, it is equally likely to have done the same when preparing the labels for notices of the bar date.
 

 There was also circumstantial evidence that the labels supplied by Yoder were not complete. Only four of twenty scheduled products liability claimants filed proofs of claim. In addition to Bratton’s attorney, attorqeys for two other claimants testified that they had not received notice. Evidence that one addressee did not receive a notice supports the inference that another addressee did not receive the notice.
 
 See Baldwin v. Fidelity Phenix Fire Insurance Co.,
 
 260 F.2d 951 (6th Cir.1958) (testimony that agent didn’t receive notice supports jury’s finding that neither agent nor insurance company received notice mailed to both).
 

 The evidence other than Ornstein’s testimony that he did not receive the notice is at best neutral. If the Bankruptcy Court had considered all the evidence without relying on a presumption and still found that notice was received, it would have been clearly erroneous. Non-receipt is sufficient ground for excusable neglect, and it is clear from the lower court opinions that-had those courts found non-receipt the claim would have been allowed.
 

 Accordingly, the judgment of the District Court is reversed and the case remanded for reversal of the Bankruptcy Court order expunging Bratton’s claim.
 

 [1]
 

 . Ornstein was the attorney who filed Bratton’s products liability complaint. Responsibility for the products liability case was sometime later transferred from Ornstein to another attorney at a different office of the same law firm. Orn-stein continued to represent Bratton on a workers’ compensation matter. We do not consider it significant that notice was sent, if sent at all, to Ornstein rather than the attorney from the same firm currently representing Bratton in his claim against Yoder. Notice to Ornstein would have been reasonably designed to bring the matter to Bratton’s attention.
 

 [2]
 

 . We also need not decide whether the procedure used to mail the notices was sufficient to comply with Interim Bankruptcy Rule 2002’s directive that "the clerk of the bankruptcy court shall gjve notice.” We do, however, expressly disapprove of the procedure followed by the ■Bankruptcy Court in permitting the debtor to determine the addresses to which notices were sent without any involvement of the court. The debtor in a Chapter 11 case is in a position to benefit greatly if notice of a bar date is not received by particularly troublesome creditors. The Bankruptcy Court could have easily removed any doubt as to whether notice had been sent to a particular creditor if it had either kept á copy of the address labels supplied by the debtor or had someone in the clerk’s office check the supplied addresses against a list of creditors in the court file.
 

 [3]
 

 .As there was no Interim Rule corresponding to Rule 906, the former Rule 906 of the Rules of Bankruptcy Procedure remained effective until the new Bankruptcy Rules were adopted.
 
 See
 
 § .405(d) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2685 (1978).
 

 [4]
 

 . The definition urged by Yoder was adopted by the court in
 
 In re Frankina,
 
 29 B.R. 983, 986 (Bankr.E.D.Mich.1983). Bratton urges the more liberal standard of
 
 In re Magouirk,
 
 693 F.2d 948 (9th Cir.1982). We express no opinion as to which definition should be used.
 

 [5]
 

 . To support the proposition that testimony of non-receipt does not rebut the presumption of receipt, the District Court relied on
 
 In re Majors,
 
 19 B.R. 275 (Bankr.M.D.Tenn.1982);
 
 In re Torres,
 
 15 B.R. 794 (Bankr.E.D.N.Y.1981); and
 
 In re Heyward,
 
 15 B.R. 629 (Bankr.E.D.N.Y.1981). These decisions are inconsistent with the common law views of presumptions and the law of this Circuit.
 

 [6]
 

 . The Court also held that a copy in the file of a notice addressed to the plaintiff was not sufficient evidence of mailing to give rise to the presumption.
 

 [7]
 

 . The fact sought to be established by the presumption is an element of a claim or defense to be determined under federal bankruptcy law, not state law. Federal law is therefore determinative of the effect of the presumption.
 
 Cf.
 
 Fed.R.Evid. 302.
 

 [8]
 

 . The facts giving rise to the presumption often give rise to an inference that remains and may still be considered by the factfinder.
 
 See
 
 IX
 
 Wigmore on Evidence
 
 § 2491 (Chadbourn rev. 1981), (“[T]he legal consequence [of the presumption] being removed, the inference, as a matter of reasoning, may still remain_")•
 

 [9]
 

 . A discussion by the American Law Institute comparing the Thayer and Morgan theories as applied to the presumption of receipt arising from proof of mailing may be found at 1
 
 Wein-stein’s Evidence
 
 ¶ 300[01] at 300-5 to 300-7.
 

 [10]
 

 . The text of the proposed rule was as follows:
 

 In all cases not otherwise provided for by Act of Congress or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.
 

 [11]
 

 . The House version of the rule was as follows:
 

 . In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with the evidence, and, even though met with contradicting evidence, a presumption is sufficient evidence of the fact presumed, to be considered by the trier of the facts.
 

 [12]
 

 . A more complete list of the commentary on this'question may be found at 21 C. Wright & K. Graham,
 
 Federal Practice and Procedure
 
 § 5126 n. 6 (Supp.1983).
 

 [13]
 

 . Professors Wright and Graham interpret Rule 301 as providing that a rebutted presumption still sufficies to carry the issue to the jury, wliich should be instructed that it may infer the presumed fact. 21 C. Wright & K. Graham,
 
 *1120
 

 Federal Practice and Procedure
 
 § 5122 at p. 572. This interpretation differs from the bursting bubble theory only in the effect given an "illogical" presumption, i.e., one where the facts giving rise to the presumption do not logically give rise to an inference that the presumed fact exists.
 
 See id.
 
 § 5126 at pp. 609-11, 609 n. 22. According to Wright and Graham, once an illogical presumption was rebutted the presumption would still have the effect of requiring that the question be sent to the jury with instructions that it may infer the presumed fact. Under the bursting bubble theory a rebutted illogical presumption would have no effect and the only evidence on the question would be the rebuttal evidence, which would be conclusive. However, in the case of a "logical” presumption, such as the presumption of receipt involved here, the jury would be allowed to consider the inference naturally drawn from the facts establishing the presumption whether or not the presumption is given any effect after rebuttal. Wright and Graham's interpretation would therefore have no effect on the present case.
 

 Wright and Graham’s conclusion that Rule 301 rejects the bursting bubble theory is based primarily on the Conference Committee's statement that:
 

 If the adverse party does offer evidence contradicting the presumed fact, the court cannot instruct the jury that it may presume the existence of the presumed fact from proof of the basic facts.
 
 The court may, however, instruct the jury that it may infer the existence of the presumed fact from proof of the basic facts.
 

 Id.
 
 § 5121 n. 27 (emphasis added). The emphasized portion of this quotation is not inconsistent with the bursting bubble theory. Nothing in the legislative history indicates that Congress was concerned with the distinction between "logical” and "illogical” presumptions. The statement that the jury
 
 may
 
 be instructed to consider an inference is most naturally read as permitting such an instruction when called for by the existence of a logical inference. An “inference" not based on logic is not an inference at all, but a presumption. Jurors would have no way to decide how much weight to give an “inference" drawn from a fact that their own logic tells them has no relevance to the question to be decided. The sentence immediately preceding the emphasized portion of the Conference Committee’s report clearly indicates that the jury should not be allowed to apply a presumption once rebutted.