**In re Larry G. COVER, aka Commercial Electronics and Zanesville Radio Telephone, Debtor.**

**CENTRAL OIL FIELD SUPPLY COMPANY OF LOGAN, Plaintiff,**

v.

**Larry G. COVER, dba Blue Lion Electric, Defendant.**

**Bankruptcy No. 2–82–04311.
Adv. No. 2–88–0298.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 8, 1989.

Richard M. Wallar, Neal Dillon Co., L.P.A., Logan, Ohio, for Central Oil Field Supply Co. of Logan.

Brent A. Stubbins, Stubbins, Phillips & Co., L.P.A., Zanesville, Ohio, for Larry G. Cover.

Charles M. Caldwell, Office of the U.S. trustee, Columbus, Ohio, Asst. U.S. trustee.

## ORDER GRANTING MOTION TO DISMISS

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion to Dismiss ("Motion") filed by the defendant, Larry G. Cover, the debtor in the Chapter 7 case of *Larry G. Cover, dba Commercial Electronics, Zanesville Radio Telephone,* Case No. 2–82–04311 ("Debtor"). The Motion seeks dismissal of the Complaint to Determine Dischargeability ("Complaint") filed by Central Oil Field Supply Company of Logan ("Central"). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(I).

### II. *Statement of Undisputed Facts and Arguments of the Parties*

Central's Complaint seeks a ruling by this Court that the pre-petition debt owed to Central by the Debtor in the amount of $13,750 is nondischargeable. The debt should be excepted from discharge, Central argues, pursuant to 11 U.S.C. § 523(a)(2)(A) and (6).[1] Central's Complaint alleges that Debtor received $13,750 from Central as a downpayment upon 18 gas motors which Central agreed to purchase from Debtor for the sum of $27,500. Prior to Debtor's bankruptcy filing, the Common Pleas Court of Muskingum County, Ohio, entered judgment in the amount of $13,750 against the Debtor. The state court judgment was based on its finding that Debtor had attempted to sell the gas motors to Central notwithstanding its lack of good title to the goods. Central's Complaint seeks to except the debt arising from its state court judgment from Debtor's general discharge under § 523(a)(2)(A) (alleging that Debtor's conduct was fraudulent) and § 523(a)(6) (asserting that Debtor was guilty of conversion) of the Bankruptcy Code.

---

1. Section 523(a)(2)(A) and (6) provide as follows:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

   ....

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

   ....

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;....

Central's Complaint, Debtor argues, was untimely filed and is therefore subject to dismissal. Debtor's case was originally filed in 1982 under Chapter 11, but subsequently was converted to a case under Chapter 7 of the Bankruptcy Code on April 21, 1988. New statements, schedules, lists, *etc.*, were filed by Debtor on April 15, 1988. Allen L. Handlan is the duly-appointed trustee ("Trustee") in the converted Chapter 7 case. On April 29, 1988, the Clerk of the Bankruptcy Court (the "Clerk") sent a notice to all creditors ("Notice") which indicated that the first meeting of creditors was to be held on June 16, 1988 (the meeting was later rescheduled and conducted on June 23, 1988) and fixed August 15, 1988 as the last date for filing a complaint objecting to the dischargeability of a particular debt. Central's Complaint was filed on November 2, 1988.

Based upon the affidavits filed in opposition to Debtor's Motion by Robert Wilson, an employee and officer of Central, and Richard M. Wallar, counsel for Central, as well as Central's memorandum *contra* to Debtor's Motion, Central's opposition to dismissal of its Complaint may be distilled to the following arguments:

(1) While Central was aware of and its representative attended the first meeting of creditors held on July 23, 1988, it did not receive the Notice fixing the last date for the filing of a complaint objecting to dischargeability of a particular debt (*see,* Wilson Affidavit at 2; Wallar Affidavit at 1);

(2) The Trustee, at the first meeting of creditors, allegedly advised Robert Wilson that "no final disposition of the case would be made pending the Debtor's filing of a proper accounting and ... [Central's] opportunity to review the same" (*see,* Wilson Affidavit at 1–2); and

(3) Central requested an "accounting and financial disclosure" from Debtor's counsel and delayed filing its complaint until it became apparent that the Debtor would not provide the requested accounting and/or other documentation voluntarily. Memorandum *Contra* at 2.

Debtor rejoins by noting that Central was listed as a creditor on the matrix and the schedules which were filed with the Court. Moreover, Central's knowledge of the pendency of this case is established, Debtor argues, by its attendance and participation at the first meeting of creditors on June 23, 1988. Indeed, Debtor questions the verity of Central's claim that it failed to receive notice of the dischargeability deadline from the Clerk. In any event, because Central had actual knowledge of Debtor's bankruptcy filing, Debtor submits, dismissal of the Complaint is required.

### III. *Legal Discussion*

### A. *Lack of Official Notice of the Dischargeability Deadline*

Central's opposition to dismissal is based on its assertion that it did not receive the Notice from the Clerk which established the deadline for filing a dischargeability complaint. *See,* Wilson Affidavit at 2; Wallar Affidavit at 1–2. To fully address this contention the Court must first describe the interrelationship between 11 U.S.C. § 523(a)(2), (4) and (6), § 523(c) and Bankruptcy Rules 4007(c) and 9006(b). This interrelationship was recently explored by Judge Waldron in *Household Finance Company v. Beam (Matter of Beam),* 73 B.R. 434, 436–37 (Bankr.S.D. Ohio 1987) wherein the court stated:

Bankruptcy Rule 4007(c) provides complaints to determine the dischargeability of certain debts under § 523 of the Bankruptcy Code must be filed within 60 days of the first date set for the meeting of the creditors. If under Rule 4007(c) a complaint alleging that a debt is nondischargeable under § 523(a)(2) (fraud or false financial statements), § 523(a)(4) (fraud or defalcation by a fiduciary, embezzlement or larceny) or § 523(a)(6) (willful and malicious injuries to persons or property), is filed late all debts which might otherwise be nondischargeable under those provisions are in fact discharged regardless of how good a case for nondischargeability a creditor might have on the merits. Once the Rule 4007(c) time has elapsed, a properly

scheduled creditor can never raise the question of the nondischargeability of a claim on any of these grounds in the Bankruptcy Court or in any other forum. *Compare* § 523(a)(3).

The result is automatic and sometimes leads to harsh results. However, Congress intended to establish a system whereby certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy. Congress meant to cure the abuse whereby debtors were routinely sued by creditors long after bankruptcy by creditors claiming that their claims were not discharged because of fraud or a false financial statement. *See* Countryman, *The New Dischargeability Law*, 45 Am. Bankr.L.J. 1 (1971). This policy underlies § 523(c) of the Bankruptcy Code.

Bankruptcy Rules 4007(c) and 9006(b)(3) implement the § 523(c) policy. The deadline fixed by Rule 4007(c) is set in stone by Rule 9006(b)(3). The latter rule makes it clear that the Rule 4007(c) time can only be extended by motion filed before the Rule 4007(c) time expires. Once the time expires, it cannot be extended on grounds of excusable neglect or otherwise. *In re Shelton*, 58 B.R. 746, 748–49 (Bankr.N.D.Ill.1986); *In re Lane*, 37 B.R. 410, 414 (Bankr.E.D.Va. 1984); *In re Whitfield*, 41 B.R. 734, 736 (Bankr.W.D.Ark.1984).

(quoting *Federal Deposit Ins. Corp. v. Kirsch (In re Kirsch)*, 65 B.R. 297, 299–300 (Bankr.N.D.Ill.1986)) (footnote omitted).

As the above excerpt from *Beam* reflects, it is Congress' intent to severely constrain the time limits on dischargeability actions in order to facilitate the Chapter 7 debtor's fresh start. *Walker v. Wilde (In re Walker)*, 91 B.R. 968, 980 (Bankr.D.

Utah 1988).[2] Yet, "[d]ue process requires that creditors so constrained should be given notice so that they may protect their rights." *Id.* Mindful of the foregoing principles the Court shall turn to Central's argument that it lacked official notice of the dischargeability deadline.

■ At the outset, the Court must express its serious doubt as to the veracity of Central's assertion that it failed to receive the Notice. A review of the official Court file strongly suggests the contrary; the matrix and schedules filed by Debtor both list Central as a creditor in the following manner:

> Central Oilfield Supply
> c/o Rick Waller [sic], Esq.
> 47 N. Market, Box 816
> Logan, Ohio 43138–0816

The Notice which was sent by the Clerk to the Debtor through the Bankruptcy Automated Noticing System (BANS) also reflects that it was mailed to Central in care of its counsel at the address listed above. The fact that the Clerk's notice as well as the matrix and schedules provided for notice to Central through its counsel is of no moment: it is well-established that, in most instances, a notice received by a creditor's attorney constitutes notice to the creditor. *Walker*, 91 B.R. at 976–77; 3 *Collier on Bankruptcy* ¶ 523.13[5][c] at 523–87 to 523–88 (15th ed. 1988). Moreover, a representative of Central actually attended the first meeting of creditors which further suggests its receipt of the Notice. In short, by all indications, the Notice was properly mailed to Central's counsel thereby creating a presumption that it was actually received. *See, Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114, 1118 (6th Cir.1985) (presumption of receipt arises from evidence that a notice was properly mailed). This does not end the Court's inquiry, however. *Yoder* establishes that

---

**2.** The apparent harshness of a literal application of the language of Rule 4007(c) is mitigated by 11 U.S.C. § 523(a)(3)(B). That section provides that a debt not properly scheduled or listed by the debtor, to which an objection to discharge may be made under § 523(a)(2), (4) or (6) of the Bankruptcy Code, will not be discharged unless

the creditor had notice *or actual knowledge* of the bankruptcy proceeding in time for timely filing of its claim and its request for a determination of dischargeability. *Ottawa County Abstract & Title v. Barton (In re Barton)*, 82 B.R. 50, 51 (W.D.Mich.1985).

"[t]estimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt; such testimony is therefore sufficient to rebut the presumption of receipt." 758 F.2d at 1118. The affidavits of both Wilson and Wallar contain sworn statements to the effect that neither Central or its counsel received the Notice. Thus, despite its skepticism regarding this assertion, the Court must, under *Yoder,* accept such testimony. In passing upon the Motion the Court shall therefore accept as true Central's contention that it failed to receive the Notice.

■ Despite its purported lack of official notice of the dischargeability bar date, Central concedes that it had actual knowledge of Debtor's Chapter 7 case and attended the first meeting of creditors. Where a creditor has actual knowledge of a bankruptcy case such knowledge imposes upon the creditor the obligation to make reasonable inquiry regarding the relevant bankruptcy bar dates and deadlines. *See, Neeley v. Murchison,* 815 F.2d 345, 347 (5th Cir.1987); *DeLesk v. Rhodes (In re Rhodes),* 61 B.R. 626, 630 (9th Cir.BAP 1986); *Osborn v. Ricketts (In re Ricketts),* 80 B.R. 495, 496–97 (9th Cir.BAP 1987); *Woodson v. Tosenberger (In re Tosenberger),* 67 B.R. 256, 259 (Bankr.N.D.Ohio 1986); *Ottawa County Abstract & Title v. Barton (In re Barton),* 82 B.R. 50, 52 (W.D.Mich.1985); *Walker,* 91 B.R. at 979–80. Here, Central apparently obtained actual knowledge of the bankruptcy in advance of June 23, 1988, inasmuch as a representative of Central attended the first meeting of creditors on that date. Central certainly had ample time—nearly two months between June 23, 1988 and August 15, 1988—to determine the dischargeability deadline and file a timely complaint. Yet, Central did not file its dischargeability complaint until November 2, 1988, two and one-half months after the bar date and nearly four and one-half months after Central received actual knowledge of the bankruptcy case. Equity aids the vigilant, not those who sleep on their rights. *Tosenberger,* 67 B.R. at 259. Moreover, creditors have a responsibility to act timely on their rights and not subject debtors to "the un-

certainties of excusable neglect in failing to timely object to discharge of a claim." *Rhodes,* 61 B.R. at 630; *Tosenberger,* 67 B.R. at 259. Under the circumstances of this case and pursuant to the decisional authority discussed above, the dismissal of Central's untimely Complaint is appropriate.

**B.** *Reliance Upon the Debtor/Trustee*

■ The remaining arguments asserted by Central are so patently meritless that they may be rejected summarily. Central makes vague allusion to its delay in filing a dischargeability complaint because it was awaiting a "proper accounting" and/or an "accounting and disclosure" purportedly promised by the Debtor and/or the Trustee. The Court file reflects that Debtor made all the appropriate filings and disclosures required by the Bankruptcy Code and Rules. If Central required additional information to assess whether it had a valid basis for filing a dischargeability complaint, then it could have obtained discovery from the Debtor through an examination under Bankruptcy Rule 2004. The delay in receiving, or nonreceipt of, the requested information does not excuse the late filing of Central's Complaint. In rejecting a strikingly similar argument by a creditor whose dischargeability complaint likewise was dismissed as untimely, the bankruptcy court in *Littell v. Littell (In re Littell),* 58 B.R. 937, 938 (Bankr.S.D. Tex. 1986) stated:

> [The creditors'] excuse for not filing their complaint on time, was the debtor's alleged lack of cooperation in providing movants with the necessary documents. The motion for an extension of time came on for hearing on January 14, 1986.
>
> Movants did not provide a sufficient explanation why they had not obtained the necessary documents and information from the debtor so they could have filed their complaint prior to June 8, 1985 [the dischargeability bar date]. The moving parties, as any creditor, should have examined the debtor and his financial records at the first creditor's meeting and obtained all necessary documents

at that meeting. If those records were unavailable at the meeting, movants could have conducted an examination of the debtor under Rule 2004 prior to June 8, 1985. At such an examination, movants could have requested debtor to bring all applicable documents which movants required to file their complaint.

Had movants used due diligence, they could have obtained the necessary information for timely preparation of a complaint.

The *Littell* court's holding is equally applicable here. The asserted delay by the Debtor and/or Trustee in providing Central with the various requested documents referred to in the affidavits of Wilson and Wallar does not excuse Central's untimely filing of the Complaint.

Based upon the foregoing, the Motion to Dismiss of Larry G. Cover is hereby GRANTED.

IT IS SO ORDERED.