In re Louis MALANDRA, Debtor.

CABLEVISION SYSTEMS
CORPORATION,
Plaintiff,

v.

Louis MALANDRA, Defendant.

Bankruptcy No. 095–72750–511.
Adv. No. 096–7014–511.

United States Bankruptcy Court,
E.D. New York.

March 31, 1997.

Daniel J. Lefkowitz by Daniel J. Lefkowitz, Jericho, NY, for Plaintiff.

Macco Hackeling & Stern by C. Stephen Hackeling, Huntington, NY, for defendant.

### *OPINION*

**(Motion for Extension of Time
to File Complaint)**

MELANIE L. CYGANOWSKI,
Bankruptcy Judge:

Louis Malandra ("Malandra" or the "Debtor") filed a voluntary petition for relief under

Chapter 7 on October 2, 1995. The meeting of creditors pursuant to 11 U.S.C. § 341 (the "§ 341 meeting") was scheduled for November 2, 1995. On October 6, 1995, the Court mailed a notice to creditors advising them of the § 341 meeting and informing them that the deadline to file a complaint objecting to discharge of the Debtor or to determine dischargeability of certain types of debts was fixed at January 2, 1996 (the "Notice").[1] A certificate of service was filed with the Court on October 10, 1995, indicating that the Notice was mailed on October 6th to the plaintiff, Cablevision Systems Corporation ("Cablevision"), at "Cablevision, c/o Daniel J. Lefkowitz, Esq., 350 Jericho Tpk, Suite 100, Jericho, NY 11753." The Court file does not contain any notices which were returned to the Court by the United States Postal Service.[2]

The Chapter 7 Trustee conducted the § 341 meeting on November 2, 1995 and, on November 15, 1995, filed a "no-asset" report with the Court.

As of January 2, 1996, no creditor had filed a complaint objecting to the Debtor's discharge. Accordingly, pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 4007(c) and 11 U.S.C. § 727, the Court entered an Order on January 17, 1996 discharging the Debtor from all dischargeable debts (the "Discharge Order"). On January 19, 1996, the Clerk mailed a copy of the Discharge Order to all creditors, including Cablevision, at "Cablevision, c/o Daniel J. Lefkowitz, Esq., 350 Jericho Tpk, Suite 100, Jericho, NY 11753" (i.e., the same address to which the Notice was mailed). Cablevision's counsel concedes receipt of the Discharge Order.

On January 31, 1996, Cablevision filed the above-captioned adversary proceeding complaint, seeking a determination of discharge-

ability of the debt owed to it pursuant to 11 U.S.C. § 523(a)(6).[3] The complaint was filed on Cablevision's behalf by Daniel J. Lefkowitz, Esq. The complaint alleges, *inter alia,* that Cablevision holds a claim against the Debtor in excess of $800,000 as a result of a judgment entered against him in the United States District Court for the Eastern District of New York following a decision by Hon. David F. Jordan, U.S. Magistrate Judge, on April 10, 1992 (the "District Court Decision"). The complaint further alleges that Cablevision was listed on Schedule D of the Debtor's petition as a secured creditor holding a judgment lien against the Debtor's residence. The complaint avers that the District Court Decision found that the Debtor was liable for modifying and selling at least 350 television decoding devices designed and intended to enable their purchasers to receive unauthorized cable television. It further alleges that (i) the Debtor had modified and sold the "pirate" cable descramblers intentionally and deliberately, (ii) the Debtor knew or should have known that his actions would harm Cablevision, (iii) the Debtor intended to harm Cablevision, and (iv) Cablevision was in fact harmed. It therefore seeks a determination that the debt owed to it is nondischargeable. A review of the docket in the adversary proceeding shows that Cablevision has not yet filed a certificate of service of the summons and complaint; nor has the Debtor answered or moved with respect to the complaint.

On February 5, 1996—well after the January 2nd date by which creditors were required to object to discharge or dischargeability and after the January 31st date on which it commenced the within action, Cablevision filed a motion for an Order "pursuant to 11 U.S.C. 105 and 523(a)(6) and (c) and

---

1. This "first meeting notice" is computer-generated by a Court employee. The notice is actually served by a central noticing center in Reston, Virginia, and a certificate of mailing, under penalty of perjury, is forwarded to the Court.

2. There is a standing order directing the Clerk's office to place any returned mail in the case file to which the mail relates, and the Clerk's office customarily does so whenever returned mail is received.

3. Section 523(a)(6) provides, in relevant part, as follows:

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

 * * * * * *

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

Rules 4007 and 9006 granting plaintiff an extension of time in which to file its complaint objecting to the discharge of the obligation of Louis Malandra ... to it."

The motion alleges that on January 22, 1996, the Discharge Order was received at the offices of plaintiff's counsel, Daniel J. Lefkowitz, Esq., P.C. (the "Lefkowitz Firm"). Cablevision contends that the

> Discharge [n]otice was the first notice of any kind regarding the debtor's Chapter 7 case received by the Lefkowitz Firm. Prior to that time, neither Cablevision nor the Lefkowitz Firm had any notice or knowledge, either actual, constructive or otherwise, of the debtor's Chapter 7 case.

*See* Notice of Motion, dated Feb. 1, 1996, ¶ 9. The motion is supported by the affidavits of two attorneys at the Lefkowitz Firm, who recount the manner in which their office processes mail, aver that had a bankruptcy notice been received, they would have seen it, and deny receipt of any notice of the Malandra bankruptcy case.

*Arguments of the Parties*

The Debtor urges that a motion to extend the time to file a complaint to determine dischargeability must, pursuant to FRBP 4007(c),[4] be made before the time has expired, and that the Court has no discretion to grant a motion which is untimely made. The Debtor asserts that notice to Cablevision's counsel constitutes "notice sufficient to apply the actual 4007 Statute of Limitations," Def.'s Aff. in Opp. ¶ 8, and that there is a presumption of the validity and regularity of service of the Clerk's notice. Lastly, the Debtor contends that the Court should not grant an extension, even if it finds that Cablevision did not receive any notice prior to the Discharge Order, because "Congress' intent to promote the expeditious and efficient administration of the Bankruptcy process is revealed in its acceptance of the rules limiting the Bank-

ruptcy Court's discretion to extend § 523(c) bar dates, notwithstanding that notices for unknown reasons may not have been received, so long as the process of noticing is constitutionally sound." *Id.* at ¶ 9, *quoting In re Pratt,* 165 B.R. 759 (Bankr.D.Conn. 1994).

Cablevision urges that the Court may extend the time where the creditor had no actual notice of the deadline. It argues that its factual affidavits rebut the presumption of receipt which is raised by the Court's certificate of service, and that a judicially-created exception to the rule that a motion must be filed before the bar date expires is therefore warranted. It further contends that to strictly apply Rules 4007 and 9006 when it had no notice of the bar date would deny it due process. Lastly, Cablevision contends that this Court has the power under 11 U.S.C. § 105 to grant an extension of time, particularly since it received no notice, its complaint was filed promptly upon learning of the bankruptcy, it holds a claim which, under controlling precedent, would be non-dischargeable and its claim is large, representing approximately 97% of all claims scheduled by the Debtor. In its arguments, Cablevision does not, however, address or respond to the Debtor's assertion that notice to the attorney (*i.e.,* the Lefkowitz Firm) constitutes sufficient notice to the creditor.

## DISCUSSION

■ This case arises in a somewhat peculiar context, as Cablevision has filed an adversary proceeding (as to which no certificate of service of the summons and complaint or answer has been filed) and, subsequently thereto, moved for an extension of time to do so. Despite the odd procedural posture, however, it is clear that what the parties are asking the Court to decide is whether Cablevision's complaint is timely.[5] In address-

---

4. FRBP 4007(c) states, in relevant part, that:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice the court may for cause extend the time fixed

under this subdivision. The motion shall be made before the time has expired.

5. Because Cablevision has already filed its complaint, its motion for an extension of time is, in one sense, moot. Yet the parties have submitted papers and briefs, and have pressed resolution of the motion. The more appropriate procedure would have been for the plaintiff to have filed its

ing this issue, the Court must look at the statutory context within which it arises.

*Section 523 and FRBP 4007, 9006*

■ Rule 4007(c) requires that a complaint, such as Cablevision's, that seeks to except a debt from discharge on the ground that it is of the kind specified in paragraphs (2), (4) or (6) of Section 523(a) [6] must be filed within 60 days following the first date set for the § 341 meeting. Alternatively, Rule 4007(c) permits that time to be extended on motion, after a hearing on notice, so long as "[t]he motion [is] made before the time has expired." Rule 4007(c) does not stand alone, however. Rather, Rule 9006(b)(3) bears on the subject and states, in pertinent part, that:

> The court may enlarge the time for taking action under Rule ... 4007(c) ... only to the extent and under the conditions stated in those rules.

Courts have been divided on the issue of whether a bankruptcy court has the power to extend the time period afforded under Rule 4007(c) after it has expired. Some have held that the time limitation imposed by Rule 4007(c) is jurisdictional and that there is no discretion under Rule 9006(b)(3) to grant an extension after expiration of the time allowed. *See, e.g., In re Klein,* 64 B.R. 372 (Bankr.E.D.N.Y.1986); *In re Booth,* 103 B.R. 800, 802 (Bankr.S.D.Miss.1989) ("Because Rules 4007(c) and 9006(b) provide a jurisdictional basis for complaints objecting to dischargeability under Section 523(c), there can be no waiver for objecting to the timeliness of the complaint"); *In re Kirsch,* 65 B.R. 297, 299 (Bankr.N.D.Ill.1986) ("Once the Rule 4007(c) time has elapsed, a properly scheduled creditor can never raise the question of

the nondischargeability of a claim ... in the Bankruptcy Court or in any other forum").

A second line of cases has permitted late filings of complaints to determine dischargeability in certain limited circumstances, such as where a bankruptcy court may have inadvertently, but nonetheless affirmatively, misled a creditor by setting an incorrect deadline. *See, e.g., In re Kennerley,* 995 F.2d 145, 148 (9th Cir.1993) (*dictum* ); *In re Themy,* 6 F.3d 688, 690 (10th Cir.1993).

A third line of cases, and that which has been adopted by the Court of Appeals for the Second Circuit, rejects the notion that the time period imposed by Rule 4007(c) is jurisdictional and permits an extension of time for a creditor to file a complaint to determine dischargeability after the Rule 4007(c) time period has expired, "if equity so requires." *In re Benedict,* 90 F.3d 50, 54 (2d Cir.1996); *see also In re Steiner,* Case No. 095–7057–511 (Bankr.E.D.N.Y. May 29, 1996) (holding that the Rule 4007 time limitation is not jurisdictional and that debtor was equitably estopped from challenging timeliness of the complaint). In *Benedict,* the Court framed its analysis by saying:

> Having decided that the time period imposed by Rule 4007(c) is not jurisdictional and thus is subject to waiver, estoppel, and equitable tolling, we now turn to the issue of whether the circumstances in the present case required the bankruptcy court to extend [the creditor's] time to file a complaint to determine dischargeability. [The creditor] argues that, because of [the debtor's] recalcitrant behavior in complying with [the creditor's] discovery requests, it should have been allowed to file an untimely complaint. While in certain circumstances this may be an appropriate basis to extend a creditor's time to file a complaint

motion for an extension of time simultaneous with seeking permission to file its complaint, or for the defendant to seek dismissal of the complaint on the ground that it is untimely. To avoid finding itself in a procedural morass, and because the issues raised by the movants are identical to those which would be raised in a motion to dismiss the adversary proceeding, the Court will deem the Debtor's opposition to Cablevision's motion to be a cross-motion to dismiss the complaint. In addition, because the parties have presented, and the Court has consid-

ered, matters outside the pleadings, the Court will treat the Debtor's application as one for summary judgment pursuant to FRBP 7012 and 7056. As both parties have briefed and been fully heard on the issues, and as no material facts are in dispute, the Court perceives no prejudice to the parties in doing so.

**6.** These paragraphs refer to debts obtained, respectively, by false pretenses, fraud, or willful and malicious injury.

to determine dischargeability, in this case it does not provide a sufficient ground in light of the bankruptcy court's finding that [the debtor] did not act in bad faith.

*In re Benedict,* 90 F.3d at 54–55.

Turning to the issues at bar, neither Cablevision's motion nor its complaint allege any facts which would bring it within the reasoning of *Benedict.* Neither is the Court aware of any equitable considerations that might apply to warrant the grant of the creditor's untimely request for an extension of time. Clearly, the mere fact that the Debtor may have committed an intentional wrong that could, if properly presented, be declared non-dischargeable within the meaning of § 523(a)(6), or the mere fact that the creditor's claim is large, totaling 97% of the scheduled debts, is not the sort of equitable consideration contemplated by the Court in *Benedict.*

■ Returning then to the statutory framework of Section 523, subsection (c)(1) provides that, in the absence of a timely complaint as to which there is a determination of non-dischargeability, a debtor is discharged of debts of a kind specified in § 523(a)(2), (4) or (6), unless the exception set forth in Section 523(a)(3)(B) applies.[7] Section 523(a)(3)(B) excludes from discharge any debt:

> neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit— ...
>
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

Section 523(a)(3)(B) therefore ensures that debts of the kind specified in paragraphs (2),

(4) or (6) are excepted from discharge where the creditor did not have notice of the case in time to file a complaint.

■ For the most part, this Court follows the line of cases represented in this district by *In re Candelaria,* 121 B.R. 140 (E.D.N.Y. 1990), and *In re Thompson,* 152 B.R. 24 (E.D.N.Y.1993). These cases hold that the time limitations set forth in Section 523(c) and Rule 4007(c) do not apply when an exception to discharge pursuant to subparagraphs (2), (4) or (6) arises in the context of Section 523(a)(3). That is, when subparagraph (2), (4) or (6) issues "are presented in a § 523(a)(3)(B) context, they are not subject to the restrictions of § 523(c) or, therefore, Rule 4007." *Candelaria* at 145 (*quoting In re Lochrie,* 78 B.R. 257, 259 (9th Cir.B.A.P. 1987)). A creditor invoking Section 523(a)(3) must, however, plead and prove both that its debt was not listed in time to timely file a complaint and that its debt comes within paragraphs (2), (4) or (6) of Section 523(a).

The present case is all the more unusual in that Cablevision acknowledges that the Debtor identified it as a creditor on his schedules and listed the debt. The thrust of Cablevision's contention is that, notwithstanding its debt having been scheduled, it did not receive notice of the case until after the discharge had issued and, therefore, it should be permitted to file an untimely complaint seeking a determination of non-dischargeability. Thus, the issue is not whether Section 523(a)(3) applies (since it clearly does not) but whether Cablevision had notice of the case in time to file either a motion for an extension of time or a timely complaint.

*Notice to the Creditor*

■ It is settled law that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861

---

7. 11 U.S.C. § 523(c)(1) states:
 Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

(1932). Consequently, mail which is properly addressed, stamped and deposited in the mail system creates a rebuttable presumption of receipt by the party to whom it has been addressed. *In re R.H. Macy & Co.*, 161 B.R. 355, 359 (Bankr.S.D.N.Y.1993); *In re Heyward*, 15 B.R. 629 (Bankr.E.D.N.Y.1981). The presumption applies in bankruptcy cases, *id.* at 632, and a debtor may invoke the presumption of receipt based upon the court's certificate of mailing. *In re Horton*, 149 B.R. 49, 57 (Bankr.S.D.N.Y.1992).

Although the United States Supreme Court adopted in *Hagner*, the common law presumption of receipt which arises from a proper mailing, it did not enunciate the quantum of proof required to rebut the presumption, or the continued vitality of the presumption, once rebutted. On those points, the cases are divided.

The case most frequently cited for the rule that a presumption of receipt may be rebutted by testimony of non-receipt is *In re The Yoder Company*, 758 F.2d 1114 (6th Cir. 1985). *Yoder* was a Chapter 11 case in which a creditor, listed on the schedules at his attorney's address, filed a proof of claim after the bar date. The debtor moved to expunge the claim, and introduced the testimony of one of its employees stating that an address label was prepared for each creditor and given to the court along with the notices. A noticing service then prepared and mailed the notices. No one checked the labels against any list of creditors, and the court clerk testified that she did not know whether the labels sent to the service were the ones which the debtor prepared or whether they were prepared from the matrix, on which the creditor was admittedly not listed. The creditor's attorney testified that he had not received the notice. The Sixth Circuit overturned as clearly erroneous the bankruptcy court's finding that the attorney had received notice. In making its determination, the bankruptcy court had relied on the presumption of receipt and ruled that the presumption had not been rebutted by testimony of non-receipt. In its reversal, the Sixth Circuit held that testimony of non-receipt is sufficient to rebut the presumption and, once rebutted, the presumption disappears and cannot be considered as evidence of receipt. *See also In re Custom Center, Inc.*, 163 B.R. 309, 319 (Bankr.E.D.Tenn.1994) ("Since the IRS denies receiving the letter, the court cannot presume that it was received...." (*citing Yoder*)).

The courts which have followed *Yoder* and its reasoning have relied upon the general proposition that a presumption is rebutted "upon the introduction of evidence which would support a finding of the nonexistence of the presumed fact"—a fairly minimal standard. *See Yoder*, at 1118 (*quoting* 10 Moore's Federal Practice § 301.04[2] (2d ed)); *see also In re Cover*, 97 B.R. 375 (Bankr.S.D.Ohio 1989) (Chapter 7 debtor challenged untimely dischargeability complaint; affidavits of creditor's counsel that the notice was not received rebut the presumption). Even when this minimal standard is applied, however, a party must do more than show that he searched the relevant files and found no notice. *In re Dodd*, 82 B.R. 924 (N.D.Ill.1987). Even *Dodd* recognizes, however, that "direct testimony of nonreceipt, particularly in combination with evidence that standardized procedures are used in processing claims, would be sufficient to support a finding that the mailing was not received, and thereby rebut the presumption accorded a proper mailing." *Dodd*, 82 B.R. at 929 (involving a Chapter 13 case in which a creditor moved for leave to file a late proof of claim).

Despite this line of cases, federal courts in New York have not been as forgiving. Rather, they hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt. *See In re Heyward*, 15 B.R. 629 (Bankr.E.D.N.Y.1981) (motion for extension of time to file complaint denied where parties contended that neither attorney nor creditor received the first meeting notice); *In re Torres*, 15 B.R. 794 (Bankr. E.D.N.Y.1981) (denying motion to revoke confirmation of Chapter 13 plan based upon creditor's denial of receipt of notice of the bankruptcy proceedings); *In re Horton*, 149 B.R. 49 (Bankr.S.D.N.Y.1992) (granting summary judgment dismissing untimely dischargeability complaint); *In re R.H. Macy & Co.*, 161 B.R. 355, 360 (Bankr.S.D.N.Y.1993)

(denying motion to extend Chapter 11 claims bar date); *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31 (N.D.N.Y.1995) (denying reconsideration of expunged claim).

The Court agrees with former Chief Bankruptcy Judge Burton Lifland of the Southern District of New York that if "a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would become unraveled." *In re R.H. Macy & Co.,* 161 B.R. 355 (Bankr.S.D.N.Y.1993) (*quoting In re Trump Taj Mahal Assoc.,* 156 B.R. 928, 939 (Bankr.D.N.J.1993)). Accordingly, the Court holds that the affidavits of Cablevision's counsel are insufficient to rebut the presumption of receipt which arises from the Court's certificate of mailing of the Notice.

One other point merits brief discussion. The Court agrees that *Yoder* is a thorough and carefully-reasoned decision and that it is particularly persuasive in the context of a Chapter 11 case (such as *Yoder*) in the aftermath of the decision of the United States Supreme Court in *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *See also Linder v. Trump's Castle Assoc.,* 155 B.R. 102 (D.N.J.1993) (vacating denial of motion to file late claim in Chapter 11 and remanding to bankruptcy court for further consideration in light of *Pioneer*). However, as noted, *Yoder* has not been followed in New York, even in those cases decided after *Pioneer,* and *Pioneer* itself recognizes that different results may obtain depending upon the chapter of the Bankruptcy Code under which the debtor has filed.

Unlike *Yoder,* the present case is one filed under Chapter 7. As the Court stated in *Pioneer:* "the 'excusable neglect' standard of rule 9006(b)(1) governs late filings of proof of claim in Chapter 11 cases *but not in Chapter 7 cases." Pioneer,* 507 U.S. at 389, 113 S.Ct. at 1495 (emphasis added). In footnote 4 of the *Pioneer* decision, the Supreme Court further points out:

> One of the time requirements listed as excepted in Rule 9006(b)(3) is that governing the filing of proofs of claim in Chapter 7 cases. Such filings are governed exclu-

sively by Rule 3002(c). See Rule 9006(b)(3); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432 (CA9 1990). By contrast, Rule 9006(b) does not make a similar exception for Rule 3003(c), which, as noted earlier, established the time requirements for proofs of claim in Chapter 11 cases.

507 U.S. at 389, n. 4, 113 S.Ct. at 1495, n. 4.

■ Even if the Court were to hold that the presumption had been rebutted in this case by the affidavits of Cablevision's counsel, it would still conclude as a matter of law, based upon the undisputed evidence, that the creditor's attorney received notice of the proceeding. On the one side are the affidavits of Cablevision's counsel. On the other is the following evidence: the Court's certificate of mailing, the fact that the case file contains no returned mail, and counsel's concession that his office timely received the Discharge Order, which was mailed to the same address as the Notice. *In re Hobbs,* 141 B.R. 466 (Bankr.N.D.Ga.1992) (denying motion to reopen case to file complaint on the ground that creditor's affidavits were not sufficiently specific and no returned mail was in the file); *Yoder, supra* (court can consider receipt of later notice to be evidence of receipt of first notice).

### Denial of Due Process

■ Cablevision contends that to apply the Rule 4007 time limitations in this case would deny it due process of law under the Fifth Amendment to the Constitution of the United States. The due process clause requires that no person be deprived of property without due process of law. Under *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), due process is satisfied by "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The means employed to give notice

> must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected ... or,

where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Mullane,* at 315, 70 S.Ct. at 657–58 (citations omitted); *see also In re Horton,* 149 B.R. 49 (Bankr.S.D.N.Y.1992). In *In re Pratt,* 165 B.R. 759 (Bankr.D.Conn.1994), a case on all fours with the present case, the court stated:

> Congress' intent to promote the expeditious and efficient administration of the bankruptcy process is revealed in its acceptance of the rules limiting the bankruptcy court's discretion to extend § 523(c) bar dates, notwithstanding that notices for unknown reasons may not have been received, so long as the process of noticing is constitutionally sound.... The noticing procedure employed by bankruptcy courts is deemed complete when the clerk's office certifies that notice was mailed to the appropriate parties.... Proof of receipt is not required.

*Id.* at 762 (citations omitted).[8]

For these reasons, the Court believes that the notice given in the present case complies with the strictures of the due process clause.

*The Reach of Section 105*

Cablevision relies upon statements in *In re Tuzzolino,* 71 B.R. 231, 233 (Bankr.N.D.N.Y. 1986), and *In re Barr,* 47 B.R. 334, 336 (Bankr.E.D.N.Y.1985), for the proposition that a judicially-created exception to Rule 4007 might be warranted where the creditor has not received actual notice of the filing deadline. *Barr* held that the court had no discretion to use the excusable neglect concept contained in Rule 9006 in order to enlarge the time for filing a complaint under Rule 4007. The court stated, in *dictum,* that a "judicially created exception to the Rules might be warranted where the complaining creditor has not received actual notice." *Id.* at 336. However, the court did not rule on the issue as the creditor there had received actual notice. Similarly, the court's state-

ment in the *Tuzzolino* decision was also dictum as the creditor had received actual notice of the case.

 Cablevision further contends that this Court has the power under 11 U.S.C. § 105 to grant an extension of time because (i) its complaint was filed promptly upon learning of the bankruptcy, (ii) it holds a claim which, under controlling precedent, would be declared non-dischargeable, and (iii) its claim is large, representing approximately 97% of all claims scheduled by the Debtor. The Court is aware of no decision—and Cablevision has cited to none—which extends a deadline, in the nature of a statute of limitations, based upon the magnitude of the claim which would be lost if the limitations period were enforced.

Courts have granted an extension of the deadline to file complaints by relying upon 11 U.S.C. § 105. *See, e.g., In re Greene,* 103 B.R. 83 (S.D.N.Y.1989). In *Greene,* the court permitted the case trustee to file an untimely complaint objecting to discharge in order to prevent a perceived abuse of process. There, the debtors had failed to schedule a known creditor, had amended their schedules only in response to the creditor's motion, and had engaged in "obstreperous behavior" to hinder the trustee's efforts to liquidate the only asset. There are no such allegations here. Similarly, in *In re Napoli,* 34 B.R. 25 (Bankr.E.D.N.Y.1983), this Court (Cecelia H. Goetz, U.S.B.J. ret.) relied upon Section 105 to vacate a discharge which had been granted in error, as the Court erroneously believed that the creditor had abandoned its dischargeability complaint.[9] The *Napoli* Court held that it had the power to vacate a discharge that would not have been entered had the Court realized the adversary proceeding was still "very much alive." *Id.* at 27.

Similar facts are not, however, present in this case. The discharge here was not issued in error. Rather, it was issued after the Section 523(c) deadline had passed and after

---

8. The court also noted, in a footnote, that it was aware of decisional authority relating to theories of presumption of receipt of notice, but preferred to decide the case on the grounds given.

9. The creditor failed to timely appear at pre-trial conference, and the Court closed the adversary

proceeding. When the creditor appeared late, the Court told him the case could be restored to the calendar by stipulation or upon motion. The creditor filed such a motion, but in the interim, the discharge had issued.

a review of the docket reflected that no complaints or requests for an extension of the deadline had been filed as of that point in time.

*Notice to the Creditor's Counsel*

 Lastly, Cablevision has not responded to the Debtor's assertion that notice to its counsel is sufficient, nor has it raised the argument on its own. However, the Court is mindful of the affidavit of Cablevision's counsel where he states:

> In the course of my firm's practice, it frequently receives notices relating to the commencement of cases under Title 11 of the United States Code by persons or businesses we have obtained judgments against on behalf of our clients. My firm often represents the interests of our clients as creditors in the bankruptcy proceedings of such debtors and the attorneys at my firm know how such matters are to be handled, and the importance of deadlines in a Chapter 7 case.

Affidavit of Daniel J. Lefkowitz, Esq., sworn to Jan. 29, 1996, at ¶ 6. Further, the Lefkowitz Firm filed the present complaint on behalf of Cablevision and is representing Cablevision in this proceeding. Under these circumstances, the Court believes that notice to counsel is sufficient to bind the client and is constitutionally sound. *Yoder, supra,* at 1117, n. 1; *In re Savage,* 167 B.R. 22 (Bankr. S.D.N.Y.1994) (notice of a bankruptcy filing sent to a creditor's attorney will be binding on that creditor where the attorney has been retained to collect the debt scheduled in the petition) (*citing In re Frankina,* 29 B.R. 983 (Bankr.E.D.Mich.1983)); *Linder v. Trump's Castle Assoc.,* 155 B.R. 102 (D.N.J.1993); *In re Cover,* 97 B.R. 375 (Bankr.S.D.Ohio 1989); *In re Price,* 871 F.2d 97 (9th Cir.1989); *In re Alton,* 837 F.2d 457 (11th Cir.1988); *but see In re Hutchison,* 187 B.R. 533 (Bankr. S.D.Tex.1995).

*CONCLUSIONS*

1. The Court has jurisdiction over the subject matter and the parties to this core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). Venue is properly laid in this district pursuant to 28 U.S.C. § 1409.

2. The affidavits of Cablevision's counsel are insufficient, as a matter of law, to rebut the presumption of receipt which is properly invoked in this case.

3. Cablevision has failed to raise a genuine issue of material fact as to whether it had actual notice of this proceeding.

4. Application of the deadline contained in FRBP·4007 to Cablevision does not deprive it of property without due process of law.

5. Notice to Cablevision's counsel was sufficient to apprise Cablevision of the proceeding within constitutional mandates.

6. Section 105 of the Bankruptcy Court does not permit the Court, in circumstances such as those found in this case, to extend the deadline set forth in FRBP 4007.

7. Cablevision's motion for leave to file an untimely complaint is denied. The Debtor's cross-motion to dismiss is granted and the complaint is therefore dismissed in its entirety, without costs to either party.

Debtor's counsel is directed to settle on notice an order and separate judgment within ten days hereof.