KEMPF

v.

The STATE of Ohio et al.

[Cite as *Kempf v. State,* 181 Ohio App.3d 623, 2009-Ohio-1877.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91211.

Decided April 20, 2009.

Joseph W. Diemert Jr. & Associates Co., Joseph W. Diemert Jr., and Daniel Powell, for petitioner.

Richard Cordray, Attorney General, and M. Scott Criss and Lisa M. Eschbacher, Assistant Attorneys General, for respondent the state of Ohio.

Gregory Trout, Chief Legal Counsel, and James Guy, Staff Counsel, for respondent Ohio Department of Rehabilitation and Correction.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The petitioner, Colleen Kempf, commenced this habeas corpus action against the respondents, the state of Ohio and the Ohio Department of Rehabilitation and Correction (collectively referred to as "the department"), to compel her release from incarceration. She submits that her reincarceration after her successful completion of an intensive program prison and release is unauthorized. Pursuant to court directives, the parties have completed discovery, have submitted a joint statement of stipulations, and have filed cross-motions for summary judgment and briefs in opposition. Accordingly, this matter is now ripe for adjudication. For the following reasons, this court grants the department's motion for summary judgment, denies Kempf's motion for summary judgment, and denies the application for a writ of habeas corpus.

{¶ 2} Kempf stole approximately $444,000 from St. Joseph Academy, an all-girls high school in Cleveland, and dissipated the money. In *State v. Kempf,* Cuyahoga C.P. No. CR–496080, Kempf pleaded guilty to aggravated theft, and on October 2, 2007, Judge Joseph D. Russo sentenced her to four years in prison and ordered her to make restitution. Shortly after arriving at the Ohio Reformatory for Women, department officials informed Kempf that she might be eligible for an intensive program prison ("IPP").

{¶ 3} R.C. 5120.032 directs the department to establish and use an IPP, which is an intense 90–day boot-camp rehabilitation program. The statute requires the department to notify the sentencing court and to follow the sentencing court's directions on the prisoner's participation in the IPP. If the trial court at the time of sentencing recommends that the prisoner not be placed in the IPP, the department "shall not place the prisoner in any intensive program prison." R.C. 5120.032(B)(1)(a). If the sentencing court recommends or makes no recommendation on placement, then the department may place the prisoner in an IPP, but the department must notify the sentencing court.

{¶ 4} Specifically, if the sentencing court does not make a recommendation on placement and if the prisoner is otherwise eligible, "at least three weeks prior to placing the prisoner in the prison, the department shall notify the sentencing court of the proposed placement of the prisoner in the intensive program prison * * *. The court shall have ten days from receipt of the notice to disapprove of the placement. If the sentencing court disapproves the placement, the department shall not proceed with it. If the sentencing court does not timely disapprove of the placement, the department may proceed with plans for it." R.C. 5120.032(B)(1)(a).[1]

---

1. Ohio Adm.Code 5120–11–03(D) provides for notification but differs slightly from the statute. The rule requires that the warden or contract monitor notify the sentencing judge by certified

{¶ 5} R.C. 5120.032(B)(1)(b) provides: "The department may reduce the stated prison term of a prisoner upon the prisoner's successful completion of a ninety-day period in an intensive program prison."[2] The subsection further provides that a "prisoner whose term has been so reduced shall be * * * placed under post-release sanctions."

{¶ 6} Ohio Adm.Code 5120–11–08 concerns removal from the IPP. Subsection (A) states: "A prisoner's privilege to continue to participate in the program may be revoked at the sole discretion of the director upon the recommendation of either the program review hearing committee or the rules infraction board * * *." Subsection (B) provides: "As provided in this paragraph a prisoner may be removed from the ninety-day imprisonment phase of the program and * * * required to serve the remainder of the imposed sentence * * *. (2) The prisoner may be involuntarily terminated from the program whenever it is determined that: * * * (c) The prisoner does not meet the eligibility criteria or requirements for program approval pursuant to paragraphs (C), (D), (E) and (F) of rule 5120–11–03 of the Administrative Code * * *." Ohio Adm.Code 5120–11–03(D) concerns notification of the trial court judge when the judge did not make a recommendation concerning an IPP. Finally, Ohio Adm.Code 5120–11–08(D) provides: "Prior to involuntary termination from the program, the prisoner shall be afforded a disciplinary hearing in accordance with rule 5120–11–05 of the Administrative Code or a program hearing in accordance with rule 5120–11–07 of the Administrative Code."

{¶ 7} In the instant case, Judge Joseph D. Russo had made no recommendation one way or the other concerning Kempf's placement in an IPP. On October 4, 2007, Kempf applied for an IPP. On November 8, 2007, the department sent the required "veto letter" by regular U.S. Mail. This letter was addressed to "Honorable Judge Russo" at 1200 Ontario Street, Cleveland, Oh 44113, the correct address of the Cuyahoga County Common Pleas Court. It did not specify which Judge Russo; this court notes that there are several Judge Russos on the Cuyahoga County Common Pleas Court. This letter included Kempf's name and correct criminal case number. It also specified: "If you want to approve/disapprove the placement, please notify my office of your decision within ten days after receipt of this letter. If you timely disapprove, the department will not proceed

---

or electronic mail. As in the statute, the judge then has ten days "after the mail receipt" to notify the department of disapproval. If the judge does not notify the department of disapproval "within ten days after the mail receipt," the department may place the prisoner in the program.

2. Ohio Adm.Code 5120–11–10(B) is even more emphatic about the result of a successful completion: "The department shall terminate the stated prison term of a prisoner upon the prisoner's successful completion of a 90-day period in an intensive program prison."

with the placement. If you do not timely disapprove, the department may proceed with placement * * *. I have attached a form letter for your response. However, if you approve of such placement, no response is needed, but the department would prefer an affirmative response."

{¶ 8} The parties stipulate that the department sent the "veto letter" by regular U.S. Mail, instead of by certified mail as required by the Administrative Code, because of budget constraints.[3] Additionally, the department apparently could not fax the letter to the judge.[4] This veto letter was not returned to the department as "undeliverable" or for any other reason, and the sentencing court did not send a response. Accordingly, Kempf was accepted into the IPP and successfully completed it.

{¶ 9} On February 7, 2008, the department sent another notice by regular U.S. Mail to the "Honorable Judge Russo" at the Cuyahoga County Common Pleas Court to inform him of Kempf's successful completion of the IPP. Again, this notice was not returned to the department as "undeliverable" or for any other reason. However, in an affidavit attached to the department's motion for summary judgment, Judge Joseph D. Russo swears that he personally opens and reviews all mail addressed to him or his courtroom and that he never received either letter. Kempf does not dispute this. Moreover, Judge Russo stated that had he received notification, he would not have approved of her participation.

{¶ 10} On February 19, 2008, the department released Kempf from custody under one year of postrelease control. Upon return to her home in Cuyahoga County, Kempf was assigned a parole officer. On February 20, 2008, they met so the parole officer could explain the terms and conditions of her parole.

{¶ 11} However, by the afternoon of February 20, 2008, the department had learned that Judge Russo and the Cuyahoga County Prosecutor were questioning how Kempf was placed in the program. Specifically, the department learned that Judge Russo was stating that he had never approved of Kempf's placement. The department concluded that it had erroneously released Kempf. It reasoned that because it "could not document that the veto letter was sent according to statute and rule, [it] did not have the legal authority to place her in the program. As [it] did not have authority to place her, [it] did not have the authority to release her

---

3. Exhibit X of the joint stipulations. Usually a statement published in a newspaper is inadmissible hearsay. *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007–Ohio–323, 860 N.E.2d 749. However, in the present case, the parties stipulate as to its accuracy.

4. The 5:47 p.m. February 20, 2008 e-mail from Brian Byorth, Exhibit M to the joint stipulations.

after 90 days."[5] Consequently, the department arranged for Kempf to be reincarcerated as an erroneous release pursuant to R.C. 5120.48.[6]

{¶ 12} Thus, at 10:00 a.m. on February 21, 2008, Kempf's parole officer instructed her to report immediately to his office, apparently on the pretext of showing him documentation regarding restitution to St. Joseph Academy made by the school's insurer.[7] When she arrived, she was immediately arrested and reincarcerated. The parties agree that Kempf had not violated the conditions of her parole by February 21, 2008. This habeas corpus action followed.

{¶ 13} Both Kempf and the department make strong and forceful arguments. Kempf argues as follows: R.C. 5120.032 was fulfilled. She qualified for the IPP. The department sent the notice as statutorily required; the statute does not require certified mail. The statutory scheme requires judicial disapproval. Pursuant to the statute, if the department hears nothing from the trial court, it may proceed with the IPP; silence is consent. In the present case, there was no disapproval. Therefore, the department properly allowed Kempf into the IPP. R.C. 5120.032(B)(1)(b) grants the department the power to reduce a prison term upon successful completion of the IPP. Ohio Adm.Code 5120–11–10(B) confirms this: "The department shall terminate the stated prison term of a prisoner upon the prisoner's successful completion of a ninety–day period in an intensive program prison." When Kempf successfully completed the program, the department exercised that power when it released her. At that moment, her status "locked in," and she was no longer under a four-year prison term; the department had terminated it. She could be returned to prison only if she violated parole, and that did not happen. Furthermore, Ohio Adm.Code 5120–11–08(B) confirms this interpretation. The words "a prisoner may be removed from the ninety-day imprisonment phase of the program" indicate that the department may remove someone only during the 90–day part of the IPP. Once the 90 days have lapsed, the person may no longer be removed. Accordingly, on February 21, 2008, because Kempf was no longer under a prison sentence, her reincarceration was not authorized, and habeas corpus will lie to effect her release.

{¶ 14} Alternatively, Kempf argues that when a prisoner is released through no fault of his own, as a result of state actions that transcend simple neglect and

---

5. February 21, 2008 1:25 p.m. e-mail from Guy James and Exhibit O to the joint stipulations.

6. R.C. 5120.48(B) of this statute provides as follows: "If a prisoner is released from a state correctional institution prior to the lawful end of the person's prison term * * * whether by error, inadvertence, fraud, or any other cause except a lawful parole or judicial release * * * [the adult parole authority] may arrest the prisoner without a warrant and return the prisoner to the state correctional institution to complete the balance of the prisoner's sentence."

7. Joint stipulation No. 25 and paragraph 15 of Kempf's affidavit.

when reincarceration is unequivocally inconsistent with fundamental principles of justice, then the state should not reincarcerate. Kempf expounds that her successful completion of the IPP, her release upon everyone's good-faith belief that she was entitled to be released on February 19, 2008, and the department's summary revocation of her release upon learning that the judge might not have actually received the required notification transcends simple neglect and shocks the modern conscience.

{¶ 15} Indeed, the court considers that the department's knowing abandonment of the certified-mail requirement in the Ohio Administrative Code may be problematic. In an unfavorable light to the department, the knowing disregard of the Administrative Code "short circuits" the process and permits arbitrary enforcement. The department justified reincarcerating Kempf because it could not document that the veto letter was sent according to statute and rule. However, by disregarding the certified-mail requirement, it prevented itself from being able to document receipt. Thus, when a trial judge says, "I didn't get the notice," "I don't know if I got the notice," or "I don't remember getting the notice," the department could declare the prisoner ineligible and reincarcerate because it cannot document what happened.

{¶ 16} In response, the department argues that Kempf wrongly conceptualizes her situation. The critical statutory language is in R.C. 5120.032(B)(1)(a): "The court shall have ten days from receipt of the notice * * *." Similarly, Ohio Adm.Code 5120–11–03(D) provides "within ten days of mail receipt * * *." The prerequisite of successful completion of the IPP is actual receipt by the trial judge of the veto letter. The statutory scheme requires the sentencing judge's knowing approval. Without such a receipt and knowing approval, Kempf's participation in the IPP was void ab initio, and she was always under the four-year prison sentence. Thus, her release on February 19, 2008, was erroneous, and the department could have her summarily arrested and reincarcerated pursuant to R.C. 5120.48.[8] The department counters Kempf's "shocks the conscience" argument by arguing that neither this court nor the department can or should abrogate a judicially imposed sentence unless it is certain that all the prerequisites have been fulfilled.

{¶ 17} In analyzing and weighing these arguments, the court concludes that the statutory language "receipt of the notice" is the critical and controlling language. The use of this language shows that the statutory scheme requires

---

8. Kempf's argument that R.C. 5120.48 is inapplicable because the department's rules limit an erroneously released offender to one who was released due to calculation error, mistaken identity, or inadvertent release by the county sheriff is unpersuasive. The statute's broader language must be given effect.

actual receipt and knowing approval by the trial court. Without that actual receipt, the statutory prerequisite is not fulfilled, and Kempf's participation in the IPP was void ab initio. Accordingly, the department did not terminate her sentence upon release and had the authority to reincarcerate her.

{¶ 18} Kempf's reliance on those cases that hold that a properly addressed letter placed in the U.S. Mail creates a presumption that it reaches its destination and is actually received is misplaced. *Hagner v. United States* (1932), 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; *In re Yoder Co.* (C.A.6, 1985), 758 F.2d 1114; and *Griffin v. Gen. Acc. Fire & Life Assur. Co.* (1953), 94 Ohio App. 403, 52 O.O. 123, 116 N.E.2d 41. Those cases also hold that the presumption is rebutted by evidence that the addressee never got the letter. Judge Joseph D. Russo's affidavit, which Kempf does not dispute, rebuts that presumption.

{¶ 19} The problematic issue, that it is unfair to allow the department to declare a prisoner ineligible because it cannot document receipt when its disregard of the certified-mail requirement prevented it from doing so, is trumped by the longstanding principle that the state is not estopped when exercising governmental functions, like administering the prison system. *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452; *Campbell v. Campbell* (1993), 87 Ohio App.3d 48, 621 N.E.2d 853; and *State ex rel. Holcomb v. Walton* (1990), 66 Ohio App.3d 751, 586 N.E.2d 176.

{¶ 20} Finally, Kempf's "shocks the conscience" argument is not persuasive. This case presents a very peculiar set of circumstances. The gravamen of the problem is the ministerial error of addressing the letter to "the Honorable Judge Russo," and not "the Honorable Judge Joseph D. Russo." It is also apparent to this court that the parties acted in good faith. However, the statutory requirements of actual receipt and knowing judicial approval had to be fulfilled, and they were not. This court also weighs the trial judge's intent not to release Kempf. Finally, when one steals $400,000 from nuns and school girls, appeals to transcending justice sound hollow.

{¶ 21} Furthermore, there is an adequate remedy at law that precludes habeas corpus relief. Ohio Adm.Code 5120–11–08(B)(2)(c) provides that a prisoner may be involuntarily terminated from the program whenever it is determined that the prisoner does not meet the eligibility criteria or requirements for program approval pursuant to Ohio Adm.Code(D) 5120–11–03 which governs judicial notice of the veto letter. Ohio Adm.Code 5120–11–08(D) provides that prior to involuntary termination from the program, which would include the eligibility requirements for 5120–11–03(D), "the prisoner shall be afforded * * * a program review hearing in accordance with rule 5120–11–07 of the Administrative Code." *In re Piazza* (1966), 7 Ohio St.2d 102, 103, 36 O.O.2d 84, 218 N.E.2d

459. "Habeas corpus is an extraordinary remedy and as with every extraordinary remedy is not available as a means of relief where there is an adequate remedy in the ordinary course of the law. * * * nor may it be resorted to where an adequate statutory remedy for review of the questions presented exists." *Luchene v. Wagner* (1984), 12 Ohio St.3d 37, 12 OBR 32, 465 N.E.2d 395, and *In re Coleman*, 95 Ohio St.3d 284, 2002-Ohio-1804, 767 N.E.2d 677.

{¶ 22} Accordingly, this court denies Kempf's motion for summary judgment, denies the respondents' motion to dismiss as moot, grants the respondents' motion for summary judgment, and denies the application for a writ of habeas corpus. Costs assessed against petitioner. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).

*Judgment accordingly.*

JONES, P.J., and BLACKMON, J., concur.